AUGUSTUS FRANK et al., Appellants and Respondents, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Impleaded, etc., Appellants and Respondents.

Where a person, other than the lessee, is shown to be in possession of lease-hold premises, the law presumes that the lease has been assigned to him by an instrument sufficient to transfer the term and to satisfy the Statute of Frauds; but it does not presume that the assignee entered into any express covenant to pay rent, so as to make himself liable through privity of contract, or otherwise than through privity of estate.

The principles which govern the liability of an assignee of a lease are applicable to the case of a receiver of the property of the lessee, and he

is legally and equitably chargeable with the payment of the rent reserved for such time as he continues to occupy the property demised.

The lessor, lessee and assignee of a lease may modify its terms by reducing the amount of rent, although there is a mortgage upon the property covered by the lease, where there is no covenant on the part of the assignee for the benefit of the mortgagee.

A mortgagee, out of possession, has no lien upon rents; until he elects to take possession, or moves for a receiver; the rents belong to the lessor, who may contract as he chooses with the assignee in regard to them.

The E. & G. V. R. R. Co. leased its road to W. for the unexpired term of its charter. By the terms of the lease, the lessee agreed to pay, as rental, interest on certain mortgage bonds before that issued by the lessor, and to pay the mortgage debt at maturity. The covenants in the lease were made binding on the successors and assigns of the parties. W. executed a lease of the same property to the E. R. Co., the lease containing substantially the same covenants and conditions. The lessee took possession, and thereafter the leased road was operated as part of its system; it executed a mortgage on all its property, including its leasehold interests in said road and other railroads. The E. R. Co. having become insolvent, an action was brought by the attorney-general to dissolve it, in which a receiver was appointed, who took possession of its property, including that covered by said lease. The said mortgage was foreclosed, and by the decree the referee appointed to sell was directed to sell the mortgaged property in one parcel, the plaintiff being at liberty, however, "to abandon and disclaim, at any time before the sale, any leasehold estates or interests," by giving notice thereof to the referee, in which case the latter was directed not to expose for sale the estates and interests so abandoned. The receiver, who had been also appointed receiver in the foreclosure suit, was directed to assign to the purchasers, on their request, all executory contracts of the E. R. Co., but it was provided that they should not be required to assume any such contracts entered into before the appointment of the receiver. The terms of sale, which were publicly read before the sale, excluded such property "as will be declared excepted at the time and place of sale." The referee, in his report of sale, stated that at and prior thereto he made due and public announcement that the said lease, and the estate or interest purporting to be created thereby, would not be included, and in his deed the same were expressly excepted. The property sold was purchased under the Reorganization Act of 1874 (Chap. 430, Laws of 1874); the purchasing trustees conveyed to the new company, organized as provided by the act, by deed containing the same exceptions as in the referee's deed, and the certificate of incorporation of said new company, in reciting the foreclosure proceedings, expressly stated that said lease was exempted from the property sold. The receiver, from the time of his appointment up to the transfer by him, operated the leased road; after the transfer, the new company operated it. In an action to foreclose the mortgage given to secure the bonds issued by

the E. & G. V. R. R. Co., as aforesaid, *held,* that by its lease to W. the consideration to be paid for the leasehold interest thereby created, *i. e.,* payment of the bonds, was the rent reserved; that as the lease from W. to the E. R. Co. embraced all he had acquired from his lessor, it operated in fact as an assignment of the entire term, and the E. R. Co. became liable for the principal and interest on the bonds, both by privity of contract and privity of estate; that when the receiver took possession and operated the leased road, he became liable in effect as assignee during the period of his occupation; that the lease was neither destroyed nor affected by the foreclosure of the mortgage given by the E. R. Co., or by the action brought to dissolve it; that while it did not appear expressly that the required notice of withdrawal of the lease was given prior to the foreclosure sale, yet that the presumption arising from the fact that it was withdrawn was that notice was given, and the circumstances showed this was the intent, and the purchasers, therefore, acquired no title; but that, as the new company, immediately after its organization, took possession of the property covered by the lease and thereafter operated the leased road, in the absence of proof as to the capacity in which or under which authority it so entered and occupied, the presumption was that it entered rightfully and, therefore, in subordination to the lease, and so that it became, *prima facie,* liable, as assignee of the lease, to pay the rent, as stipulated in the lease, during the time that it occupied, at least until some new arrangement was made relieving it from liability.

It appeared that at a time while the new company was operating the leased road, an agreement was made between it, the lessor and the lessee, to the effect that it should not thereafter pay out anything upon the bonds. *Held,* that so long as this agreement remained in force said company was relieved from the liability to make such payment.

(Argued June 20, 1890; decided October 7, 1890.)

CROSS APPEALS from a judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made at the March term, 1887, which modified a judgment entered upon the decision of the court on trial at Special Term.

Action to foreclose a trust deed in the nature of a mortgage executed by a railroad company to secure the payment of its bonds.

Certain railroad corporations, organized severally under the names of the Erie and Genesee Valley Railroad Company, the Erie Railway Company and the New York, Lake Erie

and Western Railroad Company, are herein referred to respectively as the Genesee Valley Company, the Erie Company and the appellant company, they being so termed in the opinion.

The mortgage sought to be foreclosed was executed June 20, 1871, by the Genesee Valley Company to the plaintiffs and one Lockwood, as trustees for the bondholders, to secure the payment of certain bonds, concurrently issued, to the amount of $120,000 of principal, due July 1, 1886, and the interest coupons attached, due successively on the first days of January and July in each year. The mortgage provided that if the interest on the bonds remained unpaid for six months, the whole amount of principal and interest should be due and payable, and the mortgagees might take possession.

On November 1, 1871, the Genesee Valley Company leased its road and all the rights, powers and privileges appurtenant thereto to Lauren C. Woodruff for the unexpired term of its charter, which was for 100 years, and of any renewal thereof, the lessee " paying, or causing to be paid, therefor the bonded debt of $120,000 whenever the same shall become due, * * * and also all lawful taxes * * * and assessments. * * * In case of payment of the bonds by the party of the first part (Woodruff) or the Erie Railway Company, thereafter the annual rent to be one dollar and taxes." The lessee expressly covenanted, among other things, to operate the road as a first-class railroad ; to pay the interest on the bonded debt, and, upon its maturity, to pay the principal or provide for a renewal of the loan ; to complete the road from Dansville to a connection with the Erie railway ; to keep it and its appurtenances in repair ; to indemnify the lessor against all suits, damages and costs, and, upon the expiration or other sooner determination of the term granted, to surrender the demised property in as good condition as when received, ordinary wear and use excepted. The various covenants were made binding upon the successors and assigns of the respective parties.

November 8, 1871, said Woodruff leased the same property

to the Erie Company by an instrument containing substantially the same covenants and conditions.

February 4, 1874, the Erie Company, being then in possession of the railroad and property covered by said leases, executed a mortgage thereon, as well as upon other property, to the Farmers' Loan and Trust Company to secure the payment of bonds to the amount of $40,000,000. The interest coupons outstanding against the Genesee Valley Company up to and including those falling due January 1, 1875, were paid by the Erie Company, which, shortly after that date, became embarrassed and thenceforward failed to comply with that condition of its lease which required payment of interest. In May, 1875, the people, through the attorney-general, commenced an action to dissolve the corporation, and on the twenty-sixth of that month Hugh J. Jewett, who was then the president of the Erie Company, was appointed receiver of its property and franchises, and took possession of the same, including the property covered by the lease from Woodruff.

In June, 1875, the Farmers' Loan and Trust Company commenced an action to foreclose its said mortgage, and on the fifteenth of the same month said Jewett was appointed receiver in that action also. From May, 1875, until April, 1878, when the Erie Company was reorganized, the railroad of the Genesee Valley Company was operated as part of the Erie system of railroads by said receiver, who took and retained the receipts and profits, all of which he was authorized to do by orders of the court that appointed him. In like manner he was further authorized, in his discretion, to pay rent due and to become due upon the leases held by the Erie Company, "in manner and form as provided in such leases respectively;" but he was not required, as the court further said in its order, to adopt and confirm any such leases that, upon due inquiry, he should find not to be advantageous to all parties in interest

November 7, 1877, a decree was made foreclosing the mortgage to the Farmers' Loan and Trust Company, which, after reciting, among other things, that some of the leasehold interests covered by said mortgage are " burdensome, unprofit-

able and worthless," adjudged that the property "mortgaged, or intended so to be," should be sold by a referee in one parcel subject to all liens prior to the date of the mortgage, but that the plaintiff should "be at liberty to abandon and disclaim at any time before the sale, any leasehold estates or interests embraced or included in the mortgage not deemed to be valuable, by giving notice of such abandonment and disclaimer to the referee in writing, and the referee shall not expose for sale the leasehold estates and interests, so abandoned and disclaimed as part of the mortgaged premises." The decree further provided, that all leasehold estates and interests sold by the referee, as part of the mortgaged property, should be sold subject to the terms and provisions of the leases and contracts under which they were held. The referee was authorized to do all things needful and proper, and take all measures deemed judicious and necessary to expose the property for sale in such a manner as to command the highest price. The receiver was directed to assign to the purchasers of the mortgaged premises, upon their request, all executory contracts of the Erie company, but such purchasers, as the decree further provided, should "not be required to assume any contracts of the defendant company entered into before the appointment of the receiver and all such contracts not so assumed by such purchaser * * * shall be reassigned by the receiver to the said defendant company." It was further adjudged, that if a purchase should be made under the reorganization act (Laws of 1874, chap. 430), the purchaser should take title subject to all the lawful provisions of the plan and agreement of reorganization, and that he should be fully vested with the property and premises sold in pursuance of the judgment. The property "authorized to be sold" under the decree, included "terms and remainders of terms, franchises * * * leasehold estates, contracts and other property." The notice of sale contained the same description as the decree, but the terms of sale, which were publicly read before the property was sold excluded "such portions thereof as will be declared excepted at the time and place of sale." The plan of reorganization

entered into July 21, 1876, was approved by the court August 12, 1876. It provided for the " foreclosure of the property of the company " and that " if the railway is bought in after such foreclosure a new company shall be formed to hold and work it." The referee in his report of the sale, states that at, and prior to the sale, due and public announcement was made by him that the lease between Woodruff and the Genesee Valley Company, or the estate or interest purporting to be be created thereby, would not be included in the property sold. The sale took place April 24, 1878, and the next day it was duly confirmed by the court, which directed the referee to forthwith execute a proper deed of conveyance to the purchasers, who were the reconstruction trustees, of all the property " so as aforesaid sold or intended so to be." The referee's deed conveys the property described in the decree " except, however, as follows : * * * A memorandum of agreement, or lease dated November 8, 1871, between the Erie Railway Company of the first part and Lauren C. Woodruff, lessee of the Erie and Genesee Valley Railroad Company, of the second part." The grantees covenanted to assume and save the receiver harmless from his contracts, obligations and lawful indebtedness.

April 27, 1878, the purchasing trustees conveyed to the appellant company, which was organized on that day, the same property, by a deed containing the same exceptions as the deed from the referee. The certificate of incorporation of the appellant company recites the foreclosure proceedings, but expressly states that the Woodruff lease was excepted from the property sold.

May 3, 1878, said receiver presented to the court his petition wherein, after reciting the proceedings had in the foreclosure action, he stated that in pursuance of the judgment therein " all and singular the mortgaged premises were sold as therein directed " and that the referee executed and delivered a deed " conveying the premises and every part thereof " to the purchasers ; that the purchasers conveyed to the appellant company " all and singular the said premises so, as aforesaid,

conveyed to them," but the petition also refers to the several deeds on record as a part thereof and, as already stated, each deed expressly excepts the Woodruff lease. The petitioner further states that the appellant company claims to be entitled to receive from him as receiver, "the possession of all the property and franchises embraced in the said judgment and the several deeds of conveyance." He asked for authority to transfer, surrender and deliver to the appellant company "all the property and franchises in his hands and under his control as receiver" with certain immaterial exceptions. On the same day an order was made by the court, directing him to transfer, deliver and surrender to said company "all the property and franchises whereof he is now possessed as receiver * * * and which were embraced or intended to be embraced in the judgment of foreclosure herein." June 1, 1878, the appellant company gave the receiver a receipt for "all the property mentioned as being in judgment and enumerated in the referee's report of sale thereunder." July 17, 1878, the receiver transferred to the appellant company a large number of contracts and agreements formerly belonging to the Erie Company, but not including the Woodruff lease. It was stated in the instrument of transfer, that the purchasers under the foreclosure and their successors, the appellant company, had assumed the executory contracts so assigned.

July 26, 1878, the receiver reassigned to the Erie Company the Woodruff lease, among other instruments, by a writing which recited his power to do so as conferred by the judgment in the foreclosure action in case the purchasers at the mortgage sale should refuse to assume them, and stated that such purchasers had not assumed them but had rejected and refused to assume them.

December 4, 1879, the receiver executed and delivered to the appellant company an instrument which, after reciting the application and order of May 3, 1878, stated that on the 1st day of June, 1878, he "formally transferred and surrendered to your company the property of the Erie Railway Com-

pany," excepting such as he had retained to satisfy his outstanding indebtedness as receiver. He further stated in said instrument as follows : " I now propose to, and herewith do, transfer and surrender to your company all of the property of the Erie Railway Company, real and personal, remaining in my hands as receiver, not heretofore transferred and surrendered to you as above stated, in order that you may become completely possessed of all the property of the Erie Railway Company, which was sold under foreclosure, and which became vested in you by such sale and subsequent conveyances and assignments above referred to."

November 25, 1879, final judgment was entered in the action brought by the people dissolving the corporation and adjudging that, " by reason of the said foreclosure and sale, the said Erie Railway Company has been wholly and permanently deprived of every right and franchise, and of every kind and character of property necessary to enable it to carry on business, and to exercise and employ its franchises as contemplated and required by the laws under which said company was created."

December 30, 1879, various reports of the foregoing transactions, among others, were confirmed by the court, and the receiver was discharged from all liability to and including December 5, 1879.

The railroad of the Genesee Valley Company was held and operated as follows: from November 8, 1871, to May 26, 1875, by the Erie Company; from the latter date to June 1, 1878, by Mr. Jewett, as receiver; and from that time onward, so far as appears, by the appellant company.

May 14, 1879, the appellant company, of which Mr. Jewett was president from its organization, served a notice upon the Genesee Valley Company, and upon Lauren C. Woodruff, stating that the Erie Company came into possession of the road under an agreement with Woodruff, and although extensive and permanent improvements were made, it was operated at a loss; that he, as receiver, also operated it at a loss, having been advised that the lease was void, to which Mr. Woodruff

had assented, but on account of public and other considerations he did not abandon it; that "he did not expect that the operation of the road at a loss, solely for the benefit of that part of the public which it accommodated, would, in addition to his loss, expose him to a claim for rental;" that the appellant company "acquired no interest in this property, but merely succeeded to the possession of the receiver;" that the appellant company was no longer willing to continue the operation of the road at a loss, and, therefore, gave notice that it would cease to operate the road on July 1, 1879.

June 30, 1879, said Woodruff made a written proposition to the appellant company to the effect that it should continue to operate the road in question after July 1, 1879, until further notice, and to pay the expenses of running it, but that it should not be "compelled to pay any rent for the use of the same." No obligation was to be implied from the execution of such proposal, which was not to be so construed as to affect any of the legal rights of the parties thereto "as the same shall exist on and after July 1, 1879." This proposition was presented to the directors of the Genesee Valley Company, who, on July 5, 1879, declared by resolution that their company desired "to have its road operated in the future as in the past for the benefit of the citizens of the territory through which it runs, and it will assent to any arrangement made by Mr. Woodruff having that end in view that will not conflict with or change the rights or obligations of Mr. Woodruff and this company under the contract between them bearing date November 1, 1871." They directed that a copy of this resolution, with its preamble embracing the opinion of their counsel upon the subject, should be attached to said proposal and returned to the appellant company, which, on the 8th of July, 1879, notified the Genesee Valley Company and said Woodruff that it would continue to operate the road during the month of July, upon the terms mentioned in the said proposal, but that unless some permanent arrangement was made by August first, it would withdraw its trains from the road. July thirtieth, said Woodruff agreed in writing with the appellant company that if it

would not withdraw its trains on the first of August, but would continue to operate the road until the first of September, it should have the right to do so " free of any rental or obligation for the use of said road during said month of August."

January 24, 1880, this agreement was continued in force from September 1, 1879, until May 15, 1880, and by two subsequent agreements, said arrangement was continued until May 15, 1881.

August 25, 1879, a resolution was adopted by the board of directors of the Genesee Valley Company, appointing a committee to confer with Mr. Woodruff, with reference to a final settlement of the difficulties, and in the meantime, requesting the appellant company to continue the operation of the road " as heretofore operated without liability to this company for its use, until such conference can be had and a settlement or compromise affected."

This action was commenced October 25, 1877, but by order of the court a supplemental summons was issued March 10, 1883, bringing in said Woodruff and the appellant company as parties defendant. Upon the trial the Special Term, by its decree, made as of October 1, 1885, adjudged that the sum of $235,605 of principal and interest was due upon the mortgage in question, and directed the usual foreclosure and sale with judgment for any deficiency, collectible by execution out of the property of the following defendants in the order named: 1. The appellant company; 2. Lauren C. Woodruff; 3. The Genesee Valley Company.

Upon appeal the General Term modified the decree " so as to limit the liability " of the appellant company, " to a sum equal to the amount of interest upon the bonds of the " Genesee Valley Company " from the first day of January, 1875, to the first day of July, 1879, with interest on the several instalments from the time they became due, respectively, amounting " on July 1, 1887, the date of entering judgment, to $61,425. This was declared to be without prejudice to the right of any party entitled thereto to require

the appellant company to account for and pay any such rent as it might be liable to pay on account of the possession and operation of the road after July 1, 1879.

December 10, 1889, the parties stipulated that when the appellant company or the said receiver should deposit to the credit of the plaintiffs " $37,882.45, the amount decreed in the action of Lauren C. Woodruff against Hugh J. Jewett, as receiver   *   *   *   being the amount due and unpaid of " the interest coupons in question from January 1, 1875, to January 1, 1878, and should pay certain costs, ".such payments to be proved by the affidavit of Hon. E. C. Sprague   *   *   *   such affidavit may be annexed to the record in this case   *   *   *   with the like force and effect as if a supplemental answer had been interposed and a final decision of the court made to the effect that such payments had been made."

The affidavit of Mr. Sprague dated February 26, 1890, that the deposit had been made as required by said stipulation is annexed to the appeal book.

*James C. Carter* for plaintiffs.   If the appellant, the New York, Lake Erie and Western Railroad Company, is personally bound to pay the mortgage debt, that obligation may be enforced in this action.   (*Burr* v. *Beirs*, 24 N. Y. 178 ; *Lawrence* v. *Fox*, 20 id. 268 ; *Dunning* v. *Leavitt*, 85 id. 30 ; *Woodruff* v. *E. R. Co.*, 98 id. 609, 626 ; *Marsh* v. *Pike*, 10 Paige, 595 ; Lewin on Trusts, §§ 845, 846 ; *Perry* v. *Knott*, 4 Bean. 179 ; Story's Eq. Juris. § 639 ; *Ring* v. *Baldwin*, 2 Johns. Ch. 554 ; 17 Johns. 384.)   The New York, Lake Erie and Western Railroad Company is personally bound to pay the mortgage debt.   (*Williams* v. *Woodward*, 2 Wend. 487 ; *Acker* v. *Witherell*, 4 Hill, 112 ; *Bedford* v. *Terhune*, 30 N. Y. 453 ; *Carter* v. *Hammett*, 18 Barb. 608 ; 12 id. 253 ; *Howard* v. *Ellis*, 4 Sandf. 372 ; *Benson* v. *Bolbs*, 8 Wend. 175 ; *Jackson* v. *Davis*, 5 How. Pr. 123, 129 ; *Schuler* v. *Smith*, 51 N. Y 309 ; *Conway* v. *Starkweather*, 1 Den. 113 ; *Witt* v. *Mayor, etc.*, 5 Robt. 248 ; 6 id. 441 ; *Bacon* v. *Brown*, 9 Conn. 334 ; *Shipman* v. *Furniss*, 69 Ala. 549 ; *C. W. C. Co.* v. *Gardner*,

99 Ill. 151.; *Astor* v. *D'Amoreaux*, 4 Sandf. 524; Broom's Leg. Max. 556; *Lucas* v. *Nockels*, 1 C. & F. 438, 457.; *Lucas* v. *Commerford*, 3 Bro. C. C. 166; *People* v. *O'Brien*, 111 N. Y. 1; *Stewart* v. *L. I. R. R. Co.*, 102 id. 601.) The unqualified possession of the appellant company was presumptive proof that it was assignee of the lease, and imposed upon it the burden of all covenants in the lease which run with the land, and include the obligation to pay the rent or interest accruing during such possession, and the principal debt when it fell due. (*Hagar* v. *Buck*, 44 Vt. 285; *Van Vorpe* v. *Crain*, 1 Paige, 455; *Post* v. *Kearney*, 2 N. Y. 374; 1 Smith's L. C. 221; *People* v. *O'Brien*, 111 N. Y. 1; *Willard* v. *Tillman*, 26 id. 558; *Vrooman* v. *Turner*, 69 id. 280.) It will hardly be claimed for the appellant company that the alleged agreement between it and the Erie and Genesee Valley Railroad Company and Lauren C. Woodruff, permitting an operation of the road by the appellant company without rent, bound the holders of the mortgage bonds in consequence of the fact that Woodruff was one of the mortgage trustees. There is no color of foundation for such a position. (1 Perry on Trusts, § 411.)

*Lucius N. Bangs* for plaintiffs. The two instruments executed between the Erie and Genesee Valley Railroad Company and Lauren C. Woodruff, and Lauren C. Woodruff and the Erie Railway Company, must be construed as a grant in fee subject to a rent charge. (*Van Rensselaer* v. *Hayes*, 19 N. Y. 68; *Cruger* v. *McLaury*, 41 id. 219; *Black* v. *D. & R. C. Co.*, 24 N. J. Eq. 455; *Van Rensselaer* v. *Dennison*, 35 N. Y. 393–399.) There is nothing in the law or its policy looking with disfavor upon the transfer by one railroad company to another of a right to operate the line of such road. (*Woodruff* v. *E. R. Co.*, 93 N. Y. 609–615.) In respect to the interest that passed to Hugh J. Jewett, as receiver, in this mortgaged property, it will be remembered his first appointment, May 26, 1875, was in the action of the people of the state of New York, in which, among other things, a final dissolution of the corporation was sought. By virtue of the statute, on such appointment, and

giving the requisite security, such receiver was vested with all the estate, real and personal, of such corporation. (Colby's N. Y. R. R. Laws, 530, § 527.) The company taking possession from the receiver, takes it upon the same terms by which the receiver held it, and the same obligation which held the receiver to pay, irrespective of the validity of the contract, will hold this company to pay, because of the possession it retains and the implied conditions springing from the possession in view of the circumstances under which it received it. (Broom's Leg. Max. 556; *Lucas* v. *Nockells*, 1 Cl. & Fin. 438; *Astor* v. *L'Amoreaux*, 4 Sandf. 524; *Pfefer* v. *S. & F. D. L. R. R. Co.*, 18 Wis. 155; *Talbod* v. *Radnoe*, 3 Myl. & K. 252; *Thornton* v. *W. R. Co.*, 81 N. Y. 463; *Bennett* v. *Lynch*, 5 Barn. & Cres. 589–607; *Hovil* v. *Park*, 7 East. 164–166; *Messenger* v. *Andrews*, 4 Russell's Ch. 478–482; *Beidman* v. *Goodell*, 9 N. W. Rep. 900; *Douglass* v. *Wells*, 18 Hun, 88; *Judson* v. *Dada*, 79 N. Y. 373; *Lucas* v. *Commerford*, 3 Brown's Ch. 166; *Spofford* v. *Manning*, 6 Paige, 383; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, 443.) There is privity of contract — certainly privity of interest as against the contracting company — and there is privity of estate between the New York, Lake Erie and Western Railroad Company and the contracting company, that carries with it the burden of the debt and the obligation to pay. (*Van Rensselaer* v. *Hays*, 19 N. Y. 68; *Pratt* v. *Adams*, 7 Paige, 615–627; *Crosby* v. *Crafts*, 5 Hun, 327; 69 N. Y. 607; *Nat. Bank of Newburgh* v. *Bigler*, 83 id. 51.) By public policy and through binding acts of the New York, Lake Erie and Western Railroad Company it has taken upon itself the representation of the corporate property, franchises and duties of the Erie and Genesee Valley Railroad Company. (*People* v. *A. & V. R. R. Co.*, 24 N. Y. 261–269; *Talcott* v. *P. G. Township*, 1 Flip. 144; *Olcott* v. *Bd. Suprs.*, 16 Wall. 678; *Messenger* v. *P. R. R. Co.*, 36 N. J. 407; *Palmer* v. *G. J. R. Co.*, 4 M. & W. 749; *People* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 543; *F. L. & T. Co.* v. *Walworth*, 1 N. Y. 433; Laws of 1874, chap. 430; *Woodruff* v. *E. R. Co.*, 93

N. Y. 623; *Beicher* v. *M. & P. R. M. Co.*, 7 N. W. Rep. 695.) The covenants inure to the benefit of the bondholders and cannot be released by any person except the party to whose benefit they inure. (*Douglass* v. *Wells*, 18 Hun, 88–94; *Whiting* v. *Gearty*, 14 id. 498; 2 Platt on Leases, 416, 417; *Quackenboss* v. *Clark*, 12 Wend. 555.)

*J. A. Van Derlip* for the Erie and Genesee Valley Railroad Company.

*James Wood* and *Charles J. Bissell* for plaintiff. The lease made by the Erie and Genesee Valley Railroad Company to Lauren C. Woodruff was a valid lease, and the lease or agreement made by Lauren C. Woodruff to the Erie Railway Company was a valid assignment and transfer of all Woodruff's rights and obligations under his lease, and the Erie Railway Company became liable to fulfill all his obligations and became vested with all his rights. (*Woodruff* v. *E. R. Co.*, 93 N. Y. 609.) The New York, Lake Erie and Western Railroad Company, as successors of the Erie Railway Company, under the proceedings for foreclosure, and several proceedings taken on the foot of the foreclosure and sale by the parties in interest, became and is privy in estate and interest with the Erie Railway Company, and is its successor, as to all its property, franchises, rights and interests, and is liable as such for the principal and interest of the mortgage in this case. (*Woodruff* v. *E. R. Co.*, 93 N. Y. 609; *Schmid* v. *N. Y., L. E. & W. R. R. Co.*, 32 Hun, 335; *C., R. I. & P. R. R. Co.* v. *Howard*, 7 Wall. 392; 1 Platt on Leases, 57, 58, 59; 2 id. 419; *Lucas* v. *Commerford*, 3 Bro. C. C. 160; *Flight* v. *Bentley*, 7 Sim. 149.) These leases, in their terms, may be said to create if not to convey a fee. (Jacob's Law Dict. tit. "Demise;" *People* v. *A. V. R. R. Co.*, 24 N. Y. 61; *A. R. R. Co.* v. *Elliott*, 57 N. H. 397.) Every element of consideration of the facts of this case center in and are inseparably bound to the rights and interests of the bondholders; it is they, and they alone, who have the actual beneficial standing in this court, and it is their rights and the relations which

have been assigned to them by these various corporations, which are the governing and, it may be said, the exclusive elements for judgment now before this court. (Jones on R. R. Securities, §§ 72, 75, 567, 569; *W. V. Co.* v. *Vallette*, 21 How. Pr. 414.) The proceedings for the creation of the New York, Lake Erie and Western Railroad Company were taken under the statutes of this state relating to the formation of new corporations by parties interested in the old, and they are to be found in the Laws of 1873, chapter 469, and of 1874, chapter 430. It is an indispensable condition precedent to the creation of such new corporations that the entire property of the old corporation shall have been sold under the foreclosure. (*Garnsey* v. *Rogers*, 47 N. Y. 223; *Vrooman* v. *Turner*, 69 id. 280; *Davis* v. *Morris*, 36 id. 569; *Burr* v. *Beers*, 24 id. 178; *Thorpe* v. *K. C. Co.*, 48 id. 253.) The original conveyance to Woodruff and his conveyance to the Erie Railway Company operated as a fee for all practical intents and purposes. Those instruments were really grants of the fee, and none of the ordinary rules regulating the assignment of leases as mere chattel interests, applied to them. The estate conveyed embraced all the elements of a fee. (*Black* v. *D. & R. C. Co.*, 24 N. J. Eq. 465.) The instruments " operated in law as deeds of assignment, and not as deeds of lease, and none of the assignors hold any reversion, nor any interest nor estate in the land. This assignee of the estate is liable to any valid condition expressly mentioned in the conveyance in fee, which condition will run with the land and bind the heirs and assigns of the grantee, wholly independent of tenure and also independent of priority of contract or estate." (*Van Rensselaer* v. *Dennison*, 35 N. Y. 393; *Tyler* v. *Heidorn*, 46 Barb. 439; *Van Rensselaer* v. *Hays*, 19 N. Y. 83.) It is a cardinal principle of equitable jurisprudence that when a corporation is dissolved, or, from any cause, becomes extinct as a business concern, its property is a trust fund, primarily applicable to the payments of the debts of the corporation, and is always subject to this application, until it has passed into the hands of a *bona fide* purchaser. (*R. R. Co.* v. *Howard*, 7 Wall.

392; *Goodwin* v. *C. Co.*, 18 Ohio St. 169; *M. & W. P. R. R. Co.* v. *Branch*, 56 Ala. 139, 153; *Bacon* v. *Robertson*, 18 How. [U. S.] 480; *Cunan* v. *Arkansas*, 15 id. 304; *Scammon* v. *Kimball*, 92 U. S. 362–367; *Hastings* v. *Drew*, 76 N. Y. 9; *Bartlett* v. *Drew*, 57 id. 587; Story's Eq. Juris. § 1252.)

*E. C. Sprague* for defendants.   The New York, Lake Erie and Western Railroad Company is not liable in this action to pay any of the coupons or interest on the bonds in question maturing after it took possession of the railroad of the Erie and Genesee Valley Railroad Company. (*Quackenboss* v. *Clark*, 12 Wend. 555; *Tate* v. *McCormick*, 23 Hun, 218; *Johnson* v. *Bates*, 16 J. & S. 180; *Welsh* v. *Schuyler*, 6 Daly, 413; Laws of 1874, chap. 430; 3 R. S. [7th ed.] 2326; *Druer* v. *Dyer*, 7 Cush. 237; *Saunders* v. *Partridge*, 108 Mass. 556; *Vilas* v. *M. R. R. Co.*, 17 Wis. 497; *Gilman* v. *S., etc., R. R. Co.*, 37 id. 317; 40 id. 653; *C. & O. R. R. Co.* v. *Miller*, 114 U. S. 176; *Shields* v. *Ohio*, 5 Otto, 319; *R. R. Co.* v. *Georgia*, 98 U. S. 359; *Goded* v. *Farley*, 57 How. Pr. 174; *Scott* v. *McMillan*, 76 N. Y. 141; *Rider* v. *Bagley*, 84 id. 461, 465; *Wyckoff* v. *Scofield*, 98 id. 475, 477; *Argall* v. *Pitts*, 78 id. 239; *Meltenburger* v. *L. R. R. Co.*, 106 U. S. 286, 306; *Howard* v. *C. & O. R. Co.*, 123 id. 222; *Woodruff* v. *Jewett*, 93 N. Y. 612.) The plaintiffs are not entitled to recover for coupons or principal falling due on or after July 1, 1879, and the judgment of the General Term to that effect should be affirmed. (Thomas on Mort. §§ 601, 604; *Devlin* v. *Murphy*, 5 Abb. [N. C.] 242; *Flagg* v. *Munger*, 11 N. Y. 483; *Hartley* v. *Harrison*, 24 id. 170; *Douglass* v. *Wells*, 18 Hun, 88.) No recovery can be had in this action for the amount of the coupons falling due during the receivership of Mr. H. J. Jewett, for the reason that no such cause of action is set forth in the pleadings. (1 Bliss's Code, 540, § 723; *Graham* v. *Read*, 57 N. Y. 681; *Bartley* v. *Somers*, 10 id. 363; *R. E. Bank* v. *Eames*, 1 Keyes, 588; *Stevens* v. *Mayor, etc.*, 84 N. Y. 296; *Bradley* v. *Aldrich*, 40 id. 504; *Arnold* v. *Angell*, 62 id. 568; *Wheelock* v. *Lee*, 74 id. 475; *S. T. B.*

*Line*, 40 Hun, 422; *Brown* v. *Quigley*, 59 N. Y. 265; *DeGraw* v. *Elmore*, 50 id. 1; *Ross* v. *Mather*, 51 id. 108; *Brantingham* v. *Brantingham*, 12 N. J. Eq. 180; 1 Daniels Ch. Pr. 328; *Montesquieu* v. *Sandys*, 18 Ves. 302; *Hoyt* v. *Hoyt*, 27 N. J. Eq. 399.) This action cannot be maintained against the New York, Lake Erie and Western Railroad Company, for the reason that the lease from Woodruff to the Erie Railway Company is a sub-lease, and is not included in the mortgage given by the Erie and Genesee Valley Railroad Company to the plaintiffs. (*Ganson* v. *Tifft*, 71 N. Y. 48.) The leases from the Erie and Genesee Valley Railroad Company to Woodruff, and from Woodruff to the Erie Railway Company are *ultra vires* and invalid, and the appellant is not estopped from denying their validity. (*Woodruff* v. *E. R. Co.*, 93 N. Y. 609; *T. & B. R. R. Co.* v. *R. R. Co.*, 86 id. 107; 93 id. 612.) The New York, Lake Erie and Western Railroad Company is not liable to pay any portion of the $120,000 principal of the mortgage debt. (*Demarest* v. *Willard*, 8 Cow. 205, 211; *Talman* v. *Coffin*, 4 N. Y. 134, 137, 139; *Norman* v. *Wells*, 17 Wend. 130, 145, 160; *Allen* v. *Culver*, 3 Den. 284, 295, 299.) Under section 1627 of the Code of Civil Procedure no such judgment can properly be entered for deficiency against this defendant, as is ordered by the courts below. (*O. C. Bank* v. *Moore*, 112 N. Y. 543.)

Vann, J.· By the agreement entered into November 1, 1871, between the Genesee Valley Company and Lauren C. Woodruff, a leasehold estate was carved out of the fee belonging to the former and the consideration agreed to be paid therefor by the latter was the rent reserved, although in an unusual form. (*Woodruff* v. *Erie Railway Co.*, 93 N. Y. 609, 615; *People* v. *O'Brien*, 111 id. 1.) As the lease from Woodruff to the Erie Company embraced all that he had acquired from his lessor, it operated as an assignment in fact, although not such in form, of the entire term granted by the original lease. (*Stewart* v. *Long Island R. R. Co.*, 102 N. Y. 601.) Thenceforward the legal relations of the three parties named were those

of lessor, lessee and assignee under a lease. The Erie Company became liable for the interest and principal, as it fell due, both by privity of contract and by privity of estate. (Wood's Landl. & Ten. 742; Gear's Landl. & Ten. §§ 125, 126.) The former liability depended upon its express promise to pay, whether it entered into possession or not, and could be discharged only by payment, while the latter depended upon entry into possession under the lease, and could be avoided by assigning the entire term and relinquishing possession. When the receiver of the Erie Company took possession and operated the road, he also became liable, in effect, as assignee during the period of his occupation. The foundation and nature of his liability was defined by this court when it said that " He could not take possession of the property, and enjoy its use and occupation, without incurring a liability for the payment of the rent under the lease by which his predecessor secured its possession. The principles which govern the liability of an assignee of a lease seem to be applicable to the case of a receiver, and he would be equitably and legally chargeable with the payment of rent under a lease for such time as he continued to occupy the property demised." ( *Woodruff* v. *Erie R. Co.*, *supra.*)

The next and last possessor of the leasehold estate was the appellant company, and the origin, nature and effect of its possession present the chief points of controversy on this appeal. It is clear that the lease was neither destroyed nor affected by the foreclosure of the mortgage held by the Farmer's Loan and Trust Company, nor by the action brought to dissolve the Erie Company, because all of the contracting parties were not before the court in either of those actions, and the decree was made subject to all prior liens. The leasehold estate, therefore, was still in existence, unimpaired, when the appellant company entered into possession of the property. By what authority and in what capacity did it make that entry?

The claim of the plaintiffs that it entered as assignee in fact, because the judgment of foreclosure and the referee's

deed thereunder actually transferred the lease, does not appear to be well founded.

The mortgage foreclosed doubtless covered the interest of the Erie Company in the lease, and the judgment authorized its sale as a part of the property embraced by the foreclosure, but it also authorized the plaintiffs therein to abandon and disclaim their lien upon any of the nineteen leases not regarded as valuable, by notifying the referee to that effect before the sale. Thereupon, as the decree provided, that officer was required not to expose the leasehold estates, so abandoned, for sale as part of the mortgaged premises. No reason is perceived why a creditor has not the right to waive or release a part of his security, but if there is any question as to this, because, in the case under consideration, the debtor did not ask for it, it cannot be raised collaterally. The remedy must be sought in the suit in which the judgment was rendered, as even third persons, who claim rights under that judgment, are bound by the provisions affecting those rights. It does not appear expressly whether the requisite notice was given or not. It appears, however, by the referee's report of sale that the lease in question was not embraced in the property sold, and that he publicly announced before the sale that neither the Woodruff lease nor the estate created thereby would be included in the sale. The terms of sale corresponded with this announcement. The report of the referee was confirmed, and his conveyance, made under the direction of the court, expressly and specifically excepted from the effect of the sale the lease in question. The deed from the purchasing trustees contained the same exception, and the receipt of the appellant company was for the property enumerated in the referee's report of sale. Under these circumstances and those relating to the subject more fully detailed elsewhere, we think that the presumption arises that the notice had been given. When an officer of the court does an act " which would be a violation of his duty unless a certain condition had first been performed, it will be presumed that such condition was performed." (*Davis* v. *Bowe*, 118 N. Y. 55, 60.) Moreover,

independent of this presumption, the evidence shows an unmistakable intention on the part of the court, its officer and the grantees that the lease, which created, defined and, in a certain sense, constituted the leasehold estate, should be excepted from the transfer.

While the appellant company was the successor of the Erie Company, still as to the ownership of the property sold under the mortgage, at least, it was a new corporation. This plainly appears from the title, text and object of the statutes under which the reorganization was effected. (Laws of 1876, chap. 446, § 1; Laws of 1874, chap. 430; *C. & O. R. Co.* v. *Miller*, 114 U. S. 176; *Hoard* v. *C. & O. R. Co.*, 123 id. 222.) It acquired title, therefore, to no property of the old company by virtue of the foreclosure proceedings, except such as was actually transferred to it under the direction of the court. If it were true, as claimed by the plaintiffs, that all the property covered by the mortgage, including such as might be subsequently acquired, must be sold as an entirety, and that the purchaser must accept each and every part *cum onere*, a railroad corporation by making bad bargains after it had mortgaged its property could destroy the value of the mortgage.

The plaintiffs further contend that said lease was transferred to the appellant company by the receiver under the powers conferred upon him by the Special Term, and that it accepted such transfer. Title to the lease was vested in the receiver by virtue of his appointment, and it may be that the new company was willing to accept the naked title from him without any covenant to assume the burdens thereof, when it was unwilling to accept title under the foreclosure sale and assume performance of all the covenants, as required by the judgment. Certain acts of the appellant company and of the receiver are difficult to explain upon any other theory. In his petition of May 3, 1878, that officer asked for authority "to transfer, surrender and deliver" to the appellant company "all the property and franchises in his hands and under his control as receiver," subject to certain exceptions not now material. The order made was as broad as the prayer of the petition, and each

was broad enough to cover the lease, which was still held by the receiver. Yet the transfer, made July 18, 1878, of various executory contracts did not include the lease. That transfer, however, does not allude to said order, but purports to have been made pursuant to the judgment of foreclosure, and it, required the purchasers to assume the burdens. No transfer, depending on said order for authority, appears to have been made until December 4, 1879, when the receiver, by an assignment of that date, transferred to the appellant company " all the property of the Erie Railway Company, real and personal, remaining in my possession not heretofore transferred and surrendered to you as above recited, in order that you may become completely possessed of all the property of the Erie Railway Company which was sold under foreclosure and which became vested in you by such sale and the subsequent conveyances and assignments above referred to." It does not appear whether any transfer other than those mentioned was made or not, except under certain proceedings in the courts of the state of New Jersey, which affected the property in that state only, and did not include the lease in question. The assignment of July 26, 1878, to the Erie Company is not regarded as important, for the effect of a conveyance to a dying corporation, made by its own receiver in anticipation of its dissolution, is not apparent.

The appellant company, right after its organization, entered into possession of the property covered by the lease, and it has remained in possession and has operated the railroad ever since, yet it failed to show upon the trial in what capacity it entered or by what authority it operated the road. The theory of the plaintiffs as to transfer by the receiver finds some support in the entry into possession by the appellant company. It cannot be heard to say that it entered as a trespasser, for that would be asserting its own wrongful act as a defense to the claim of one who had the right to waive the tortious element, if it existed, and to insist upon the entry as valid with all the consequences that may be implied therefrom. (*Schuyler* v. *Smith,* 51 N. Y. 309; *Conway* v. *Starkweather,* 1 Den.

113.) The law presumes, under the circumstances, that it entered rightfully, and as it failed to show any other authority, may not the act of entry be regarded as a practical construction of the order of May 3, 1878, and the subsequent action of the receiver? At all events it entered into possession in subordination to the lease, for in no other way could it have entered, except as trespasser. As long as the leasehold estate was in existence no person or body corporate could give it authority to enter, except under the lease. What presumption arises from the fact of possession and occupation under these circumstances? Where a person other than the lessee is shown to be in possession of leasehold premises, the law presumes that the lease has been assigned to him. ( *Williams* v. *Woodard*, 2 Wend. 487, 493 ; *Acker* v. *Witherell*, 4 Hill, 112, 116 ; *Carter* v. *Hammett*, 12 Barb. 253 ; 18 id. 608 ; *Cross* v. *Upson*, 17 Wis. 618 ; 1 Washb. on Real Prop. 509 ; Taylor's Landl. & Ten. § 450 ; 2 Phil. on Ev. 150 ; Woodfall's Landl. & Ten. 276.) It further presumes that the assignment was sufficient to transfer the term and to satisfy the statute of frauds. (*Bedford* v. *Terhune*, 30 N. Y. 453,) It does not, however, presume that the assignee entered into any express covenant to pay rent, so as to make himself liable through privity of contract, or otherwise than through privity of estate. The appellant company, therefore, under the facts proved, became *prima facie* liable as assignee of the lease during the period that it operated the road. This involved the obligation to perform all covenants running with the land that were broken during said period, including the covenant to pay rent, or that which stood in the place of rent. The presumption that a party other than the lessee, who is found in the possession of leased premises, holds them under an assignment of the lease, may be rebutted by showing that he was in as an under-tenant. (*Armstrong* v. *Wheeler*, 9 Cow. 88; *Carter* v. *Hammett*, 12 Barb. 253.)

It is claimed that the supposed assignee may rebut this presumption by proving that he never had any assignment, and there is authority for the position. (*Quackenboss* v. *Clarke*, 12 Wend. 555 ; *Welch* v. *Schuyler*, 6 Daly, 412.) This, we

think, is open to question, provided proof of that fact involves proof of entry without right or as a trespasser, but it is not necessary to so decide in this case, as the appellant company failed to show that it never had an assignment of the lease in question. Proof that it did not take title in a certain way, as under the foreclosure proceedings, is no proof that it did not take title at all. No effort was made to show that the documents read in evidence were the only papers in existence relating to the subject. The receiver was not called to testify that he never executed and delivered to the appellant company any instrument purporting to be an assignment of, or relating to the lease, other than those in evidence. No officer of the company was asked whether he knew of any such paper. There was a failure to meet the burden of proof resting upon the putative assignee in this regard, and hence the presumption arising from possession ripened into a fact. The appellant company, therefore, is to be regarded as assignee or the lease during the time that it has occupied the leasehold estate, and as such liable for the rent accruing subsequent to the date of entry, at least until the new arrangement was made, which is alleged to have relieved it from further liability to pay rent as stipulated in the lease.

The appellant company operated the railroad covered by the lease, without complaint or question, until May 14, 1879, when it notified the original lessor and lessee, the latter being at the time one of the two mortgagees then surviving, that it was operating the road at a loss, and that it would cease to operate it on the first day of July following. Appended to this was a notice signed "Erie Railway Company by H. J. Jewett, President and Receiver," that on "behalf of the Erie Railway Company and on behalf of myself as receiver of that company, all rights to compensation for improvements and additions and all rights of reclamation for losses are hereby reserved." Negotiations followed which resulted in an arrangement between the Genesee Valley Company, Lauren C. Woodruff and the appellant company, by which the last named, at the request of the others, agreed to continue the

operation of the road at its own expense for the public benefit, provided it should not "be compelled to pay any rent for the use of the same." The mortgagees, through Woodruff, had notice of these negotiations and of the result thereof, but they made no objection, and did not attempt to take possession of the road, although they had the right to do so. What was the effect of this arrangement? As we have held, the appellant company was, at the time, in possession as naked assignee, with no express promise on its part to pay rent. This is equally true whether its title rests upon an assignment presumed, but not otherwise proved, or upon the order of May 3, 1878, as neither source of title required anything but a bare, operative transfer.

It was, therefore, liable only in respect of its possession and for such covenants only as might be broken while privity of estate continued. It was in its power to escape this liability at any time by assigning the lease and abandoning possession, even if it were done for the express purpose of avoiding further payment of rent. (*Childs* v. *Clark,* 3 Barb. Ch. 52; *Tate* v. *McCormick,* 23 Hun, 218; *Durand* v. *Curtis,* 57 N. Y. 7; 2 Platt on Leases, 416.)

Privity of estate would thus be destroyed, and with it the foundation of future liability.

It is clear that, ordinarily, the lessor, lessee and assignee of a lease may modify its terms by reducing the amount of rent. Can they do so when there is a mortgage upon the property covered by the lease, but not upon the leasehold estate itself? Why can they not, in the absence of fraud and when, as in this case, there is no covenant on the part of the assignee for the benefit of the mortgagee? Without such a covenant, or some express promise, the assignee of a lease is under no more obligation to the mortgagee of a lessor, than a grantee is to the mortgagee of a grantor. (*Vrooman* v. *Turner,* 69 N. Y. 280, 283; *Pardee* v. *Treat,* 82 id. 385; *Root* v. *Wright,* 84 id. 72; *Seward* v. *Huntington,* 94 id. 104.)

A mortgagee out of possession has no lien upon rents. Until he elects to take possession, or moves for a receiver, the rents

Statement of case.

belong to the lessor, who may contract as he chooses with the assignee in regard to them. (*Argall* v. *Pitts*, 78 N. Y. 239; *Rider* v. *Bagley*, 84 id. 461; *Wyckoff* v. *Scofield*, 98 id. 475.)

When the mortgagee takes possession, he does so subject to all arrangements made in good faith between a lessor, lessee and assignee for the relief of the latter, unless there was an express promise by him inuring to the mortgagee's benefit. The fact that rent is payable as interest on a mortgage does not affect the liability of an assignee, except while privity of estate continues. When the appellant company was about to abandon possession of the road, and extinguish the privity of estate, it was induced not to do so by the arrangement under consideration. How long that arrangement continued does not appear, but we think that so long as it remained in force, it effectually reduced the amount of rent payable by the appellant company as assignee in possession,

The judgment of the General Term should be modified by deducting therefrom the amount deposited in the Metropolitan Trust Company of New York under the stipulations of December 10, 1889, and, as modified, affirmed without costs in this court to any party.

All concur, except BRADLEY, and HAIGHT, JJ., not sitting.

Judgment accordingly.