T. J. & A. CARTER *vs.* HAMMETT & BALCH.

While the assignee of a lease, whether by parol or in writing, remains in posses-
sion, either by himself or by his sub-tenants—tenants admitted by and pay-
ing rent to him as landlord—he is liable to the original landlord, in precisely
the same manner as if he had remained personally in possession. The posses-
sion of his tenant is his possession.

Each successive occupant of the demised premises, other than the original lessee,
is liable for rent, to the lessor, only by reason of, and for the term of, his own
possession. Possession is both the foundation, and the boundary of the lia-
bility.

After the original landlords have received rent directly from a sub-tenant, and
have thus recognized him as the person responsible to them, and accepted him
as their tenant, they cannot resort to the assignors of such sub-tenant, for the
rent.

APPEAL by the plaintiffs from a judgment entered at a spe-
cial term, upon the report of a referee. The action was brought
for the recovery of rent. From the pleadings and evidence the
referee ascertained and reported the following facts :

That the plaintiffs, by an instrument bearing date the 30th
June, 1846, demised to Samuel C. Bishop and William F. Leon-
ard, the second, third and fourth stories of the premises then
known as 84 and 86 Pearl street, in the city of New-York, for
a term of four years and eleven months from the 1st day of June
1846, at the yearly rent of eleven hundred dollars ; which prem-
ises were commonly called the Carter property ; that the said
premises consist of bed-rooms, parlors, barber's saloon, bar-room,
wash-room, and a store on the floor with a bar-room, and, together
with other premises adjoining, and belonging to other owners,
were known as the hotel, called the Pearl Street House, and were
used as such ; although the last named premises are often called
the Pearl Street House, and designated as such separately ; that
Bishop and Leonard were at the said date also lessees of the last
mentioned premises, and occupied these and the premises de-
mised as aforesaid, as a hotel or public house ; that in the said
lease from the plaintiffs it was provided, that should the adjoin-
ing part of the hotel, (the Pearl Street House proper,) be sur-
rendered to the landlord, or should the landlord for any cause
whatever obtain the possession thereof, that then the term there-

Carter *v.* Hammett.

by demised should cease and be determined. That Bishop and Leonard occupied said premises (the Carter property) from the 1st of June, 1846, until on or about the 1st of January, 1847; about which time they made a specific assignment to Breden & Hovey, of their interest under the lease aforesaid; that Breden & Hovey accepted said assignment, and in pursuance thereof went into possession of the premises, and kept the hotel for two or three weeks; and that then Bishop went into possession of said premises under Breden & Hovey, without any assignment in writing to him, by Breden & Hovey. That Bishop alone continued to occupy the premises, as a hotel, until the 1st Nov. 1848; that he was succeeded by the defendants, who occupied them from the said 1st Nov. 1847, until the 18th April, 1847, and for that time paid the rent reserved in the lease to the plaintiffs; that on or about the said 18th April, 1848, the defendants *let and gave possession of the same* (that is the Carter property) to one George Seeley, and gave a written lease from said 18th April, 1848, for five years, of that portion of the Pearl Street House not belonging to the plaintiffs, (the Pearl Street House proper;) the defendants having become owners thereof by virtue of a conveyance to them from David R. Garniss, master in chancery, bearing date the 26th of October, 1847, subject, however, to two prior mortgages; that shortly previous to the said 18th April, 1848, when Seeley, and Balch, one of the defendants, were negotiating relative to the said lease and the possession of the said Carter property, Balch told Seeley that he had no control over the Pearl Street House; that Seeley could make arrangements with the plaintiffs; that he, Balch, could not lease it to him; that the rent of the Pearl Street House proper, would be eight thousand dollars a year, including the furniture in both houses; that the rent of the Carter property was eleven hundred dollars a year, and that Seeley consented to take the lease of the Pearl Street House on those terms. The defendants received possession of the Carter portion as well as the other portion of said hotel from Bishop, on or about the 1st November, 1847, when he ceased to be proprietor thereof; Bishop at the same time manually transferred to them the lease first

above mentioned, executed by the plaintiffs, and the furniture contained in the house, and that the only instrument in writing executed by said Bishop and Leonard, or either of them, in relation to the possession of the Carter property, was a bill of sale of all the furniture then in the Pearl Street House, executed by the said Bishop alone. Bishop paid the rent to one of the plaintiffs up to the 1st November, 1847, and conducted said plaintiff to the office of the hotel, and introduced him to said Balch as one of the owners of the Carter portion of the hotel, and told him that the plaintiffs would be their future landlords and would thereafter collect the rents; and the defendants let lofts and other portions of the said Carter property to different persons, and received rents for the same at various times between the 1st November, 1847, and 18th April, 1848. Seeley paid the rent for the Carter premises reserved in the aforesaid lease, falling due on the 1st August, 1848, on the 1st February, 1849, and the 1st May, 1849, on three several orders signed by Balch, one of the defendants. The plaintiffs furnished no evidence of an assignment in writing to the defendants of the lease from them to Bishop and Leonard, nor any evidence from which an assignment might be inferred; and the defendants showed that they were under-tenants to Bishop and Leonard. The referee therefore found that there was nothing due from the defendants to the plaintiffs.

*A. W. Clason,* for the plaintiffs.

*R. M. Harrington,* for the defendants.

*By the Court,* ROOSEVELT, J. This is an action for rent, brought, not against the original lessees, but against parties put into possession by them. The defendants allege that prior to the commencement of the quarter now sued for, they had transferred their interest and possession to one Seeley. And the question is, did Seeley enter and occupy the premises as the defendant's sub-tenant, to pay rent to them, or as the defendant's assignee, to pay rent to the original landlords?

Carter *v.* Hammett.

Where a person goes into possession as an *assignee* of a lease, and holds himself out to the landlord as such, he is estopped from denying the assignment, or objecting that the assignment was not in writing. This point was decided, and, I think correctly, by a former general term in this same case. (12 *Barb.* 253.) While the assignee of a lease, whether by parol or in writing, remains in possession, either by himself or by his sub-tenants— tenants admitted by and paying rent to him as landlord—he is liable to the original landlord, in precisely the same manner as if he had remained personally in possession. The possession of his tenant is his possession.

Was Seeley, then, at the time in question, an under-tenant of the defendants ; or was he a second and substituted assignee, and thereby the tenant not of his assignors but of the plaintiffs, the original landlords ? The plaintiffs, it appears, as the original landlords, had received rent directly from *Seeley,* for the three quarters immediately preceding the one in suit. They received the rent according to, and seemingly under, the original lease ; and ordinarily, therefore, they would be estopped from denying that Seeley was their tenant and not the tenant of the defendants. Seeley, however, it seems, at first refused to recognize the plaintiffs as his landlords, although they called on him for the rent ; saying " he did not know them in the matter, and would not pay the rent to them, unless they procured (which they did) an order from the defendants." Do these orders, then, thus given by the defendants, merely to obviate scruples and remove difficulties, change the legal consequences of the demand by the plaintiffs on Seeley, and their acceptance from Seeley of the rent ? It seems to me they do not. Having then recognized Seeley as the person responsible, and accepted him as their tenant, they cannot afterwards turn around and sue Seeley's assignors. The only liability of the assignors, at any time, was the result of their *possession,* and was limited in its duration by the operation of that possession. And the same cause which, while it lasted, made them liable, namely possession, on its cessation, transferred the liability to Seeley who succeeded to the possession. The rule in such cases is, and it is founded on the prin-

ciples of justice and implied contracts, that each successive party, other than the original lessee, is liable only by reason of and for the term of his own possession. Possession is both the foundation and the boundary of the liability. For the quarter in dispute Seeley was in possession, and the defendants were not. Seeley, therefore, was the person to be sued for the rent of that quarter, and not the defendants.

Judgment of affirmance, with costs.

[New-York General Term, November 6, 1854. *Mitchell, Roosevelt* and *Clerke*, Justices.]