HORNBECK v. MIDWEST REALTY, INC.

1. Specific Performance — Partial Performance — Statute of Frauds—Evidence.

In lot purchasers' suit for specific performance of land contract or in lieu thereof a decree entitling them to a rescission and reimbursement of moneys paid on the contract, plus interest and taxes, in which testimony showed plaintiffs had visited subdivision but had not selected another lot nor done anything but negotiate, finding that parties had completed an oral agreement to exchange real estate and that there was such partial performance as removed the agreement from operation of the statute of frauds was not justified (3 Comp. Laws 1929, § 13415).

2. Vendor and Purchaser—Oral Contract—Burden of Proof.

One asserting an oral contract in relation to land has the burden of proving it by clear and convincing evidence.

3. Specific Performance—Laches—Consent.

Subdivision lot purchasers who never authorized anyone else to take possession of their lot or use it either before or after discovery that defendants were building a house on it and commenced suit against vendor and its successors in interest 16 days after such discovery *held*, not to have authorized, acquiesced, consented, or approved of such use nor guilty of laches precluding relief by way of specific performance or rescission and reimbursement of moneys paid.

4. Improvements—Mistake—Good Faith—Measure of Recovery.

Owner of lot on which house was erected by another without owner's consent, approval or acquiescence is not limited in recovery merely to the value of the lot where improvement was not made as the result of a *bona fide* mistake.

5. VENDOR AND PURCHASER—CONVEYANCE BY VENDOR TO A THIRD PARTY—SPECIFIC PERFORMANCE—RESCISSION.

Conveyance by vendor of a lot to a party other than one who purchased it under a land contract, thus rendering it impossible for the vendor specifically to perform his contract, amounts to a rescission on the part of the vendor.

6. CANCELLATION OF INSTRUMENTS—CONVEYANCE OF PROPERTY TO A THIRD PERSON—RESCISSION—ABANDONMENT.

One who has contracted to sell a piece of property, whether real or personal, to another and who sells or transfers it to a third person while the contract still remains in force and executory, violates the contract by disabling himself from performing it and thereby gives to the other party the right to rescind it or treat it as abandoned.

7. VENDOR AND PURCHASER—VENDOR'S CONVEYANCE TO THIRD PARTY—RESCISSION—MEASURE OF RECOVERY.

Purchasers who had paid entire amount due on a land contract to vendor and its successors in interest *held*, entitled to rescission and to recover entire amount paid with interest and costs, where last grantee had disabled itself from specifically performing contract by conveying property to a third party, and which sent a notice of forfeiture but thereafter accepted and retained final payment of balance.

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INDIVIDUAL LIABILITY OF SUCCESSIVE HOLDERS OF VENDOR INTEREST.

In suit for specific performance of land contract, brought against vendor and its several successors in interest who were held jointly and severally liable for moneys due purchasers upon rescission, individual liability of various defendants is not determined by Supreme Court where record fails to indicate that matter was raised at time of trial and trial court, which appointed receiver, expressly reserved jurisdiction over matters of accounting, management, liquidation and disbursement of moneys.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted October 14, 1938. (Docket No. 17, Calendar No. 40,083.) Decided December 22, 1938. Rehearing denied February 1, 1939.

Bill by Warren D. Hornbeck and wife against Midwest Realty, Inc., Midwest Construction, Inc., James Dasher and wife, Fort Eureka Land Company, Edward J. Lieber, Inc., a Michigan corporation, and Currier Lumber Company for specific performance of a land contract or rescission and a money decree. Cross-bill by Midwest Realty, Inc., and Midwest Construction, Inc., against plaintiffs to secure release of property and for other relief. Cross-bill by Currier Lumber Company to enforce a lien and for other relief. From decree rendered, defendant Midwest Realty, Inc., appeals and defendants Midwest Construction, Inc., Dasher, Edward J. Lieber, Inc., and Fort Eureka Land Company cross-appeal. Affirmed.

*Younglove & Chockley,* for plaintiffs.

*Thomas L. Poindexter,* for defendant Midwest Realty Company.

*Thomas L. Poindexter* and *Howard F. Cline,* for defendants Midwest Construction, Inc., Dasher, Edward J. Lieber, Inc., and Fort Eureka Land Company.

Bushnell, J. On January 21, 1925, plaintiffs, as vendees, entered into a written contract in which they agreed to pay $1,300 for certain real estate described as follows:

"Lot numbered 432, Dasher Estates Subdivision, according to the plat recorded in liber 52 of plats, at page 13, Wayne county records."

Defendant Fort Eureka Land Company was the original vendor in this contract. The remaining defendants acquired legal title to the property subsequent to the date of the contract, the Currier

Lumber Company being the owner of record when plaintiffs' bill of complaint was filed. Plaintiffs made payments on their land contract until 1932. In April of 1936 plaintiffs received a notice of forfeiture, signed by Harry W. Brower as attorney for defendants Dasher, in which it was claimed that there was due $155.93 on the contract. After a conversation with Mrs. Robinson, an agent of defendant Midwest Realty, regarding payment, the balance due was agreed upon as $153.91, and plaintiffs paid the sum of $53.91 and agreed to pay the remaining $100 in monthly instalments. On June 16, 1936, the $100 was paid by check; plaintiffs requested a deed and abstract and were informed by Mrs. Robinson that the Midwest Realty was very busy and it would be a month or six weeks before the papers could be delivered. However, that same night Mrs. Robinson called again on the Hornbecks and told them that their check for $100 could not be accepted. A discussion followed in which Mrs. Robinson told Mrs. Hornbeck that the Midwest was going to build some houses in the subdivision and "we wondered if * * * Mr. Robinson would kind of like your lot." The Hornbecks were urged to visit the property and see if they would exchange their lot for another in the same subdivision. The Hornbecks agreed to consider the matter and, a little later, did examine the property but were not satisfied with the lot that was offered in exchange. In August the Hornbecks, after again requesting delivery of their deed and abstract, were urged to come out and see if they could not agree upon another lot. The Hornbecks again visited the property on August 9, 1936, and discovered, for the first time, that a house was being built upon their lot. Mrs. Robinson called again on the Hornbecks, who declined to

make any exchange. A conference was had the day following, between Brower and Hornbecks, but without result and, on the 19th, the vendees were served with a notice of default. The $100 check, however, had been deposited by Midwest Realty, Inc., and was paid on June 22, 1936. On August 25, 1936, plaintiffs filed a bill of complaint seeking specific performance of the land contract and, in lieu thereof, a decree entitling them to a rescission and the reimbursement of moneys paid on the contract, plus interest and taxes. The matter was referred to a circuit court commissioner, who took testimony, from which it appears that Harry Brower, agent of the Dashers and the president of Midwest Realty, Inc., apparently relied upon his assumption that the Hornbecks would take another lot and arranged with the Currier Lumber Company to furnish building materials and gave it a deed to the premises. This deed was recorded both as a deed and a mortgage.

The circuit court commissioner found that, from the date of the land contract to June 16, 1936, the Hornbecks had paid principal, interest and taxes totaling $1,713.33, and that the Currier Lumber Company had furnished building materials in the value of $1,700.29. The decree entered in the circuit court states that the amount due plaintiffs is $2,-459.33, and gives the Currier Lumber Company a mortgage lien in the sum of $1,792.50. During the pendency of the cause the parties agreed that an order might be entered appointing a receiver over the property with authority to complete the house at a cost not to exceed $1,500, and with power to sell the premises at not less than $5,700. This agreement was embodied in the decree, which provided that the receiver should have power to rent, mortgage and

sell the property, but that no sale should be made
for less than $5,700, except upon petition to the
court, and that the proceeds of the sale should be
disbursed in the following order: To the receiver
for his services, $100, and, in addition, such neces-
sary expenses as might be allowed; to the receiver
the amount disbursed by him in completing the
building and the costs of mortgage and sale; to Cur-
rier Lumber Company, $1,792.50, with interest and
costs, less any moneys realized by it from the cer-
tain other transactions therein detailed; to plain-
tiffs, $2,459.33, with interest and costs; and then to
Midwest Realty, Inc., any balance that might be
remaining.

Defendants contend that the court should have
held plaintiffs to their agreement to take some other
lot in exchange for lot 432.

Appellants argued that, although an oral agree-
ment of this nature would ordinarily be void, there
was such sufficient partial performance of the agree-
ment to require the application of 3 Comp. Laws
1929, § 13415 (Stat. Ann. § 26.910), which reads:

"Nothing in this chapter contained shall be con-
strued to abridge the powers of the court of chan-
cery to compel the specific performance of agree-
ments, in cases of part performance of such agree-
ments."

Unless we can find that an oral agreement was
completed, there is no need to consider the question
of part performance. The testimony presented in
the record does not justify the finding that the par-
ties had completed an oral agreement to exchange
real estate. Taken as a whole, the facts indicate
that the transaction between the parties was not
completed and, at most, their dealings were in the

state of negotiation. No one claims that the alleged oral agreement was definite. We are unable to find enough testimony to show mutual promises. One asserting an oral contract in relation to land has the burden of proving it by clear and convincing evidence. *Bame* v. *Bame,* 250 Mich. 515.

Plaintiffs did not know that anyone had taken possession of their property until August 9, 1936, when they visited the premises and saw a house being erected upon their lot. They had never consented to the use of their land nor could anything in their previous conversations with Brower or his agent, Mrs. Robinson, be construed as an authorization of or acquiescence in such use. On the contrary, Mrs. Hornbeck called on Brower the following day and secured legal advice two days later and plaintiffs' bill of complaint was filed August 25th. The facts strongly contradict any claim of consent, approval or laches.

It is argued that "where one by mistake built a house on the lot of another, the owner can recover no more than the value of his lot." Appellants maintain that this view is supported by *Rzeppa* v. *Seymour,* 230 Mich. 439, and *Hardy* v. *Burroughs,* 251 Mich. 578. Both of these cases dealt with a situation arising out of a *bona fide* mistake, and equitable relief was granted. The facts in this appeal cannot support a finding that there was a *bona fide* mistake on the part of Brower, Midwest Construction or Midwest Realty. Brower testified on direct examination that he assumed that plaintiffs would take another lot. He said:

"It was my understanding they were going to take another lot and I had been informed by everybody that came in contact with her that she would take another lot and I naturally became worried be-

cause we had spent quite a little money.  The first thing after her visit I wrote her a letter and asked her if she wouldn't pick out another lot.  When I received no reply to this letter we sent out a notice of intention that declared the contract void, which was followed by a forfeiture notice which was introduced into evidence in this case.  We gave one I think in the forepart of April, April 10th, in which we told them that the balance on this lot was $155.95 and if they paid this on or before April 25, 1936, we would accept that as full settlement.''

Relying on this understanding and, in the absence of a definite written agreement to that effect, Midwest conveyed to Currier, thereby making delivery of a deed to plaintiffs impossible if and when their obligation under the contract had been fully performed.  Midwest did more.  Having failed to secure plaintiffs' agreement to exchange lots, they sent a notice of forfeiture of the land contract and thereafter accepted and retained the entire amount which was agreed upon as the balance due on the land contract.  Midwest's conveyance to the Currier Lumber Company amounted to a rescission on the part of the vendors.  *Himebaugh* v. *Chalker*, 261 Mich. 80.  In *Re Reason's Estate*, 276 Mich. 376, the court said:

''One who has contracted to sell a piece of property, whether real or personal, to another and who sells or transfers the same property to a third person while the contract still remains in force and executory, violates the contract by disabling himself from performing it and thereby gives to the other party the right to rescind it or treat it as abandoned and to recover whatever he may have given in consideration of it.  1 Black on Rescission and Cancellation, §§ 210, 211; 2 Black on Rescission and Cancellation, § 432.

"This was the rule recognized in *Atkinson* v. *Scott*, 36 Mich. 18, and cases cited therein, as well as in *Weaver* v. *Aitcheson*, 65 Mich. 285, and *Himebaugh* v. *Chalker*, 261 Mich. 80."

Appellants cite *Hafner* v. *A. J. Stuart Land Co.*, 246 Mich. 465, in support of their argument that the court erred in decreeing individual liability on defendants when there was no showing of the amounts received by each of them on the land contract. The original vendor, Fort Eureka Land Company, assigned the contract to Lieber & Norton, Inc., a corporation, which later changed its name to Edward J. Lieber, Inc., and it in turn assigned to defendants Dasher, who assigned to Midwest Realty, Inc., who deeded to Midwest Construction, Inc. The various defendants were held jointly and severally liable for the payment of the money due plaintiffs. The record in this appeal does not contain any testimony as to the respective dates of transfer of title, beginning with Fort Eureka Land Company and ending with Midwest Construction, Inc. Although defendants might have been entitled to a determination of this phase of the case had the question been raised at the time of trial, we do not pass upon questions that were not raised in the trial court. The decree provides for the appointment of a liquidating receiver and sale of the premises. Furthermore, the trial court expressly reserved jurisdiction over matters of accounting, management, liquidation and disbursements of moneys and retained the right to make orders relating thereto.

The decree is affirmed, with costs to appellees.

Wiest, C. J., and Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred. Butzel, J., did not sit.