[Civ. No. 18513. First Dist., Div. One. Oct. 28, 1959.]

EDWARD LOUIS ALTVATER et al., Plaintiffs and Respondents, v. FRANCES KNIGHT BRECKENRIDGE et al., Appellants; CITY OF SAUSALITO, Intervener and Respondent.

Duffy, Walton & DeDobbeleer, Jerome A. Duffy and Herbert K. Walton, Jr., for Appellants.

William H. MacKay and John B. Ehlen for Respondents.

TOBRINER, J.—Restraining appellants from encroaching upon a public lane, the judgment here held the obstruction a public nuisance and ordered appellants to restore the lane to its former condition. The judgment also awarded damages to respondents for such obstruction. It likewise held appellants' building subject to a set back requirement of a city ordinance. Appellants' attack upon it, based upon alleged insufficiency of the evidence, error in fixing damages, and erroneous rulings on the admission of evidence, fails. However, we have concluded that in the face of the ambiguity of the ordinance, and in light of the equities involved, the imposition of the set-back requirement should not stand.

The trial judge, sitting without a jury, found: (1) that Sweetbriar Lane "consisted of a hard surface uniformly 15 feet . . . in width throughout together with an abutting shoulder of imported borrow two feet in width adjacent to the westerly side of said hard surface portion of the roadway"; (2) "[t]hat said roadway and the two-foot shoulder adjacent thereto are part of a public highway . . ."; (3) that appellants' building is subject to a 3½-foot set back requirement imposed by the City of Sausalito Ordinance Number 427; (4) that appellants' excavation is a public nuisance.

The history of the property begins a little over a half century ago. In 1906, and for more than five years thereafter, the Lantern Club occupied a building on Lot Number 22. Sweetbriar Lane afforded the only vehicular access to this club. In 1914, Mrs. Petherick commenced residence on this lot and from 1921 to 1953 drove her own car over the lane. And, as to Lot 15, Edward and Gertrude Altvater have lived there for over 40 years and have also utilized the lane as a vehicular access.

One Captain Cantwell originally owned Lot Number 20, and appellants, coowners, are his successors in interest. In 1931 Captain Cantwell requested of Sausalito City Councilman Lowe that some maintenance work be done on Sweetbriar

Lane. Lowe responded that the city could not spend public funds for the improvement of private property. Cantwell rejoined that he would convey the land to the city. These two men stood at the west corner of Lot Number 22 and decided to bring the lane up to that point, Cantwell telling Lowe that the lane should be uniform throughout.

On September 4, 1931, Cantwell conveyed the area designated in the deed to the city of Sausalito. The city proceeded to pave Sweetbriar Lane from Spencer Avenue to Lot 22. Between the deeded area and the area actually paved there is a disparity, and, indeed, the then chairman of the street committee admitted that the city did not resort to the deed to ascertain the area to be paved.

Respondents introduced considerable evidence as to the width and location of the lane. The testimony developed that prior to appellants' obstruction two cars could be parked abreast in the southern portion of the lane. Respondents showed, too, that the diameter of an American car from fender to fender is 6 to 7 feet, so that the width of the lane would compute from 12 to 14 feet. City Engineer Oglesby drew the line of the western boundary of the lane, based upon his examination of the pavement above and below the excavated area, which was ultimately incorporated in the judgment. Highway Maintenance Foreman Weymouth testified that, from his general knowledge, he believed 6 feet had been cut away in the excavated area. Finally, as of the present time one car can progress up Sweetbriar Lane only as far as the Altvater residence; if anyone parks a car north of the Altvaters' entrance the approach thereto is blocked. Appellants' obstruction has completely blockaded the Sweetbriar entrance to Mrs. Petherick's home.

█ We turn to a discussion of appellants' assignments of error, in the order initially listed, beginning with an analysis of the sufficiency of the evidence to support the finding that Sweetbriar Lane was paved 15 feet in width and had a 2-foot shoulder. Of course all inconsistences in the record must be resolved in favor of the finding (*Sketchley* v. *Lipkin* (1950), 99 Cal.App.2d 849, 855 [222 P.2d 927]) and all evidence viewed most favorably to support it (*Leeper* v. *Nelson* (1956), 139 Cal.App.2d 65, 67 [293 P.2d 111]; *Mayhew* v. *Melby* (1929), 206 Cal. 396, 399 [274 P. 517]).

Two factors dispose of appellants' attack upon the finding. First, Oglesby indicated with precision the western edge of the pavement in the disputed area. Second, Weymouth testi-

fied that a 2-foot shoulder should extend westward from the edge of the pavement in that area. While appellants make much of the fact that Oglesby's projection of the line through the excavated area did not rest upon actual physical observation of the pavement prior to excavation, Oglesby's qualifications as a surveyor and civil engineer certainly justified the trial judge in accepting his testimony. Furthermore, Weymouth's observation that the lane veered to the right at the point which he designated, and the testimony of several witnesses that the road was wide enough for two cars, support the trial court's conclusion.

While appellants point to a meagerness in the evidence supporting the finding that Sweetbriar Lane was paved uniformly to a width of 15 feet, the ruling of the court, even if erroneous, could not be prejudicial. (Cal. Const., art. VI, § 4½.) The court ordered appellants to restore Sweetbriar Lane to its former condition. Since appellants did not obliterate, but only cut into the road, minute precision in the original width of the paving is immaterial. Sweetbriar's western border has been determined; all that appellants are required to do is repair the street eastward to the old pavement.

We turn to appellants' assertions of error in the judgment of $3,000 damages to respondents Altvater and $900 to respondent Petherick. We shall discuss appellants' contention that the form of the joint judgment in favor of the Altvaters compels a reversal since it is impossible to ascertain exactly what damages each respondent has proved against appellants; we shall thereafter analyze appellants' claim that the award of damages to the three respondents was excessive.

As to the form of judgment, appellants' failure to object in the trial court precludes an assignment of error here. In *Miller* v. *San Francisco Church Exten. Soc.* (1932), 125 Cal.App. 85 [13 P.2d 824], the court held that, although plaintiff was entitled only to a judgment against either the principal or his agent, plaintiff could join both as defendants, and defendants' failure in the trial court to object to the joint judgment precluded a claim of error on appeal. (See also: *Leeper* v. *Nelson* (1956), 139 Cal.App.2d 65, 69 [293 P.2d 111].)

Appellants also fail in their claim that the bare allegation in their motion for new trial that the "decision and judgment is against the law" suffices for their objection to the form of the judgment. The rule requiring objection at

the trial level is obviously designed to correct designated error there and prevent the expense of appeal. A general objection, such as appellants', informs the trial court of nothing.

Proceeding to appellants' contention as to excessive damages, we find the court's award fully sustained by the evidence. The Altvaters, who are elderly persons, have undergone extreme discomfort as a result of appellants' actions. Because of poor health, Mr. Altvater cannot enter his home by the steep steps from San Carlos unless carried on a stretcher. Upon finding him upset because of the "inability to get out of the house" his doctor prescribed outdoor rides, which were often precluded because of the complete blockage of the lane. Since it was impossible for them to continue their previous occupancy of Mrs. Petherick's garage, the Altvaters were also forced at a cost of $12.50 per month to use a downtown garage. Finally, the trial judge could certainly infer that the obstruction, which existed from December 1956 to the time of judgment, June 5, 1958, would subject a wife, who was caring for a disabled husband, to mental suffering.

The evidence supported the trial court's finding that Mrs. Petherick's peace of mind and comfort had also been affected by appellants' nuisance. While Mrs. Petherick no longer drove an automobile, her use of Sweetbriar Lane for taxicab service and as an entrance for her visitors has been suppressed by appellants' obstruction.

The invasion of respondents' right to peaceful enjoyment of their property is a sufficient basis for damages. (142 A.L.R. 1310.) In *Judson* v. *Los Angeles Suburban Gas Co.* (1910), 157 Cal. 168 [106 P. 581, 21 Ann.Cas. 1247, 26 L.R.A. N.S. 183], the court, in addition to enjoining defendants' nuisance of smoke, fumes and gases, awarded damages of $750. In affirming, the Supreme Court stated: "[I]t is not necessary that the health of plaintiff or of members of his household should have been impaired. It is sufficient if the odors, sounds, and smoke were offensive to the senses." (P. 171.) Considering this 1910 award of $750, the instant award of damages is not excessive.

Appellants press two claims as to erroneous rulings on evidence, neither of which is meritorious. We first turn to an alleged violation of the hearsay rule.

Dual exceptions to the hearsay rule furnish the basis for upholding the trial court's ruling as to hearsay statements allegedly made by Captain Cantwell, now deceased, at a time when he owned the area involved. The first exception sanc-

tions vicarious admissions. "The relationship of 'privity' is considered a sufficient basis for the introduction of the admissions of a predecessor in title against his successor in interest." (Witkin, California Evidence, § 234, p. 265.) Section 1849 of the Code of Civil Procedure codifies this exception: "Where, however, one derives title to real property from another, the declaration, act, or omission of the latter, while holding title, in relation to the property, is evidence against the former." The second, and conclusive exception, section 1870, subdivision 4, of the Code of Civil Procedure declares admissible "the act or declaration of a deceased person done or made against his interest in respect to his real property."

■ Appellants' second alleged error as to the evidence arises from their question of Mrs. Petherick: whether or not she sued them to prevent their construction of a house. The court sustained respondent's objection grounded upon the point that the complaint furnished the best evidence as to the objective, saying: "[T]hat is the purpose of the complaint." It is difficult to fathom how appellants could possibly have been injured by such a ruling; if it were error, which is doubtful, it certainly was not prejudicial. (Cal. Const., art. VI, § 4½.)

■ We may quickly dispose of appellants' last and confusing argument as to the evidence that the trial court refused to allow proof that Mrs. Smith had also obstructed Sweetbriar Lane. It collapses in the face of the record itself: Mrs. Smith admitted that her fence and rock abutment encroached upon the lane. Even if it did so, appellants suggest no theory which converts Mrs. Smith's encroachment into their franchise to obstruct a public street.

Appellants' argument as to the inapplicability of the ordinance and the balancing of the equities interrelate. While appellants contend that the judgment both as to the requirement for the width of 15 feet and the ruling as to the 3½-foot set back conflicts with the orthodox rule of balancing the equities, we must reject the argument as to the former aspect of the judgment although we can accept it as to the latter.

■ Appellants rely upon *Christensen* v. *Tucker* (1952), 114 Cal.App.2d 554 [250 P.2d 660], to support their contention as to the balancing of the equities. The case establishes three qualifications for the invocation of the doctrine: (1) the encroachment must not be the result of defendant's willful act: defendant must be innocent; (2) plaintiff must not suffer irreparable injury by the encroachment; and (3) the hardship

to defendant by the granting of the injunction must be greatly disproportionate to the hardship caused plaintiff by the continuance of the encroachment. The first requirement bars appellants' claim as to the width of the lane; appellant Williams admitted that from the outstart he regarded the pavement as a public road; moreover, he was informed on December 7, 1956, that respondents' attorney was preparing an injunction suit; Williams' insistence upon proceeding destroys any claim of innocence as to the issue of the width of the lane.

 By the same token, however, appellants may properly ask equitable intervention as to the 3½-foot set back. Here they were "innocent" and, indeed, relied upon the building permit and the city engineer's permission to proceed.

The provision of the ordinance as to the set back is not clear. The only literal reference to set back applies to "property fronting on Bridgeway" and lies in the defining language, "Set Back: Shall include unoccupied space between the Front Street property line and the structure." The ordinance, however, does provide: "The minimum width of any free space which serves as the principal access to any dwelling shall be three (3) feet six (6) inches." Conceivably this language could apply to a set back. Conceivably it could refer exclusively to an entrance on the side or rear of the building, since the ordinance also declares: "Free Spaces: . . . every building erected . . . shall have free spaces left on each side and rear. . . ." Whatever the purport of the ordinance, appellants obtained a building permit upon the basis of the filed application.

In a complex society in which the individual must be reconciled to a multiplicity of regulation, he may properly demand precision in the applied regulations. At best the instant ordinance must succumb to the charge of ambiguity, an ambiguity which the city engineer apparently resolved in favor of appellants. As a result the damage to appellants, who proceeded to act upon the permit, outweighs any injury to the city. The city's purposes, as argued here, may very well be prospectively accomplished by a simple clarification of the ordinance, a procedure impelled not only for the future protection of those who build but also by a recognized need for clarification in administrative regulations. On the other hand, the damage to appellants, because of their past investment in a partially completed and partly not usable structure, would be far more severe.

We affirm the judgment in all respects except that which provides that appellants' building is subject to a three and one-half foot set back requirement imposed by the City of Sausalito Ordinance Number 427 and such portion of the judgment we reverse. Respondents shall recover their costs of appeal.

Bray, P. J., and Foley, J. pro tem.,* concurred.

A petition for a rehearing was denied November 24, 1959.

*Assigned by Chairman of Judicial Council.