Argued April 14, affirmed May 25, 1960

# ABBOTT *v.* BOB'S U-DRIVE ET AL

352 P. 2d 598

*Thomas J. Moore,* Portland, argued the cause for appellants. On the briefs were Schedler & Moore and F. Darold Windsor, Portland.

*Dean M. Alexander,* Portland, argued the cause for respondent. On the brief were Alexander, Buehner & Tilbury.

Before McAllister, Chief Justice, and Sloan, O'Connell and Duncan, Justices.

O'CONNELL, J.

This is an appeal from a judgment based upon an arbitration award in favor of the plaintiff and against the defendants, jointly and severally.

The facts are as follows. In April, 1952, plaintiff leased certain premises to Robert E. Thompson under the terms of which the lessee agreed to operate an automobile *"U*-Drive" business and an automobile leasing business. The lease contained a provision requiring the parties to submit to arbitration any controversy arising out of the lease. In February, 1953, Thompson caused to be incorporated the defendant Bob's U-Drive, and in October, 1953, he caused to be incorporated the defendant Continental Leasing Company. Bob's U-Drive engaged in the business of making short-term rentals of automobiles, and Continental Leasing Company leased automobiles for twelve months or longer. Thompson was president and manager of both corporations and owned fifty percent of the stock of each corporation. The automobile rental and leasing business which Thompson conducted on the leasehold premises as an individual was continued by the defendant corporations after their formation.

In August, 1954, Thompson assigned all of his interest in the lease to the defendant Bob's U-Drive. The assignment was in writing. No assignment was made to defendant Continental Leasing Company, al-

though it continued to carry on its business from the leasehold premises as before.

The operations of the two corporations were not strictly segregated. All the business was conducted from one office. There was some evidence that in the operation of the business the records did not always clearly reflect which corporation was acting in the particular instance. However, each corporation kept separate business records, separate bank accounts, separate telephones and separate stationery.

A controversy arose between the parties as to the performance of the terms of the lease by the defendants and on April 22, 1957, plaintiff, purporting to act pursuant to ORS 33.210 et seq., filed a petition for the purpose of securing an order directing the defendants to proceed to arbitration. An amended petition was filed in July, 1957. The defendant Continental Leasing Company filed its answer. The defendant Bob's U-Drive prepared an answer which was never filed. At the hearing in the circuit court for Multnomah county on the petition to order arbitration the attorney for defendant Bob's U-Drive, who was also the attorney for Continental Leasing Company, indicated that Bob's U-Drive was willing to arbitrate, whereupon Bob's U-Drive ceased to participate in the proceedings and the hearing continued as to defendant Continental Leasing Company alone.

The defendant Continental Leasing Company prayed for a dismissal of the petition on the ground that there was no assignment of the lease to it and no written arbitration agreement as required by ORS 33.230. An order was entered by the circuit court for Multnomah county requiring the defendant Continental Leasing Company to proceed forthwith to arbitrate the controversy. No order was entered

directing the defendant Bob's U-Drive to arbitrate. A hearing was then held before a board of arbitrators, which culminated in an award of $2,938.88 for the plaintiff. Both defendants filed objections to the judgment setting forth various grounds. An order was entered overruling the objections and finally on July 8, 1958, a joint and several judgment was entered against the defendants in accordance with the award.

The judgment against the defendant Bob's U-Drive is attacked on the ground that the petition as to it was dismissed upon motion of the plaintiff and, therefore, the circuit court lost jurisdiction over it.

At the outset of the hearing on plaintiff's petition the attorney for plaintiff, in colloquy between court and counsel, made the following statement: "I think probably at this time it would be well to ask to dismiss this matter with respect to Bob's U-Drive which in its answer has agreed to arbitrate under the terms of the lease." Defendants' counsel then pointed out that the answer, although tendered, had not been filed. He said "He agreed to dismiss, so it has never been filed." Later on in the preliminary stage of these same proceedings defendants' counsel stated: "Now, the request as to ordinary arbitration of the items of contract that may become a controversy with this lease—our position is that certainly Bob's U-Drive is ready and willing and able to controvert or arbitrate any controversy that may have arisen as a result of being an assignee."

After the hearing on the petition an order prepared by plaintiff's counsel was entered directing the defendant Continental Leasing Company to proceed to arbitrate the controversy. In the preamble to this order it was recited that "upon due showing made by respondent Bob's U-Drive that it had not refused

to arbitrate pursuant to the terms of the said lease contract, the Petition was thereupon dismissed as to said respondent Bob's U-Drive."

It is to be noted that the order itself did not dismiss the petition as to defendant Bob's U-Drive; the preamble merely recited that the petition had been dismissed by some preceding action. The entries in the judgment roll up to the entry of the foregoing order contain no order dismissing the petition as to the defendant Bob's U-Drive. There is nothing in the record except the statements of counsel recited above indicating an understanding that there was no necessity to force Bob's U-Drive to arbitrate inasmuch as it was willing to do so.

It appears then that, strictly speaking, the petition was not dismissed as to Bob's U-Drive and that it would be more accurate to say that counsel for both plaintiff and defendants, realizing that there was no necessity to force Bob's U-Drive into arbitration, simply directed their attention to the question of the applicability of the arbitration statutes to defendant Continental Leasing Company and that the so-called motion and order were designed only as a discontinuance of the proceedings as to Bob's U-Drive and not to oust the court of jurisdiction over it.

██ Even though the order is interpreted as an order of dismissal, we are of the opinion that Bob's U-Drive, by its participation in the subsequent proceedings, submitted itself to the jurisdiction of the board of arbitrators and to the circuit court. Bob's U-Drive expressed its willingness to arbitrate and it took part in the proceedings before the board of arbitrators. An order directing a party to arbitrate is not essential to give the board of arbitrators jurisdiction where the parties submit their controversy to the board pur-

suant to their written agreement to arbitrate. An order to arbitrate may, under certain circumstances, be essential to the boards' jurisdiction where a party refuses to arbitrate. Sturges, Commercial Arbitration and Awards, pp. 446 et seq. (1930). But we are not here presented with a case in which a recalcitrant party questions the jurisdiction of the board or the court; here Bob's U-Drive made a general appearance before the board and thereafter made a general appearance before the circuit court by filing objections to the entry of the judgment and otherwise participating in the proceedings subsequent to the judgment.

■ The defendant also asserts that jurisdiction was lacking because plaintiff failed to follow the statutory procedure in other particulars. It is contended that the written agreement to submit to arbitration was not delivered to the county clerk as required by ORS 33.310. The lease which contained the arbitration agreement was made a part of the petition which was before the court. Therefore, if delivery to the county clerk of the written contract to settle future controversies by arbitration is essential to give the court jurisdiction, there was proof in the record that the parties had so contracted. The failure to deliver another such writing to the county clerk was not fatal.

■ It is contended that there was no proof of service of a signed copy of the award upon the parties. The record discloses proof of service on counsel for defendants. This is sufficient. *Multnomah Lumber Co. v. Weston Basket Co.*, 54 Or 22, 99 P 1046, 102 P 1 (1909). Cf., *Bartley v. Doherty*, 70 Or Adv Sh 939 (1960).

■ It is also contended that the record fails to disclose the oath of the arbitrators as required by ORS

33.260. The award of the arbitrators recites that the oath required by statute was taken. There being no evidence showing that the oath was not taken the recital will be presumed to be true. Cf., *In re Hart's Estate,* 11 Cal2d 89, 70 P2d 539, 77 P2d 1082 (1938); *Withington v. Warren,* 10 Metcalf (51 Mass) 431 (1845); *Burton v. Atkins,* 199 Miss 275, 24 So2d 355 (1946); *Wolfrom v. Anderson,* 249 Wis 433, 24 NW2d 881, 25 NW2d 880 (1947).

A more serious question is presented by the second assignment of error. It is urged that the defendant Continental Leasing Company could not be required to submit to arbitration under ORS 33.210 et seq. because it had not been a party to a written contract containing an agreement to sumbit to arbitration which is required by ORS 33.220.

It is conceded that no written assignment of the lease was ever made to Continental Leasing Company. The assignment ran to Bob's U-Drive only. There is no satisfactory explanation given for limiting the assignment to the one corporation. At the time of the assignment both corporations were occupying portions of the leasehold premises and had been paying rent. Until the assignment was made Thompson continued to be the lessee but he managed both corporations and apparently treated each corporation as having an equal right to the occupancy of the leasehold premises. Although the long-term leasing business of Continental Leasing Company was not developed until after the short-term rental business had been in operation by Bob's U-Drive for some time, there is no evidence that Continental Leasing Company was a sublessee under Bob's U-Drive. Both corporations had an equal status as tenants of Thompson. The looseness of the arrangement was satis-

factory as long as Thompson was the common manager. It was only after Thompson decided to sell his interest in the businesses that an assignment of the lease assumed importance.

The plaintiff maintains that Continental became a party to the written lease by virtue of ratifying an act of its promoter, by adoption of a contract of its officers and by accepting the benefits under the lease.

■ We are of the opinion that Continental became a co-assignee of the lease together with Bob's U-Drive prior to the written assignment of lease. When a person other than the lessee is in possession of leased premises paying rent to the lessor, there is a presumption that the lease has been assigned to the person in possession. *O'Neil v. A. F. Oys & Sons, Inc.,* 216 Minn 391, 13 NW2d 8 (1944); *Dickinson Co. v. Fitterling,* 69 Minn 162, 71 NW 1030, 75 NW 731 (1897); *Amalgamated Properties v. Lusher,* 163 Misc 545, 297 NYS 357 (1937); *Gillette Bros., Inc. v. Aristocrat Restaurant, Inc.,* 239 NY 87, 204 NYS 756, 145 NE 748 (1924); *Washington Real Estate Co. v. Roger Williams Silver Co.,* 25 R I 483, 56 A 686 (1903).

■■ In a majority of the modern cases applying this rule the implied assignment arising out of possession is regarded as effective to form the basis for the running of covenants in the lease so as to burden or benefit the assignee. *Amalgamated Properties v. Lusher,* supra; *Gillette Bros., Inc. v. Aristocrat Restaurant, Inc.,* supra; *Hinchman v. City Water Co.,* 179 Tenn 545, 167 SW2d 986 (1943). It is said in *Leadbetter v. Pewtherer,* 61 Or 168, 171, 121 P 799, Ann Cas 1914B, 464 (1912) that "This cannot amount to or be shown to establish a formal assignment, for the purpose of binding defendant by the covenants

of the lease; but it is an oral assignment, and when he enters and is recognized thereunder by the lessor he becomes liable for the rental specified therein." See also, *Culver v. Van Valkenburgh,* 60 Or 447, 119 P 753 (1912). The court, in the Leadbetter case, held that the possessor was liable for the rent covenanted to be paid in the written lease. Apparently the recovery was deemed to be for use and occupation rather than for the breach of a covenant running with the land. We believe, however, that the cases holding that the implied assignment carries with it liability on the covenants which run with the land state the better rule and we adopt it. But cf., Tiffany, Landlord and Tenant, § 158, p 973. If the possessor's interest is regarded as arising out of an implied assignment, it seems only consistent to treat him as standing in the same position as an assignee who occupies the premises under a written assignment. The occupation of the premises and the payment of rent should be sufficient to take the case out of the statute of frauds. *In re Tenenbaum & Abramowitz, Inc.,* 56 F2d 217 (S.D.N.Y. 1931); *Amalgamated Properties v. Lusher,* supra; *Frank, et al., v. New York, Lake Erie & Western Railroad Co.,* 122 NY 197, 25 NE 332, 26 NE 755 (1890). Contra, *Culver v. Van Valkenburgh,* supra. This is sometimes expressed in terms of estoppel as in *Mann v. Ferdinand Munch Brewery,* 225 NY 189, 121 NE 746, 747, where it was said:

> "* * * A person in possession who holds himself out to the landlord as assignee is estopped from denying the assignment or objecting that the assignment was not in writing. Carter v. Hammett, 18 Barb. 608."

If the policy of the statute of frauds is satisfied and if it is assumed that the privilege of occupancy

arises out of an assignment of the term, there would be no reason for limiting the operative effect of the assignment as suggested in the Leadbetter and Culver cases, supra. In the instant case the opportunity for fraud was minimal. The gap in written proof to establish liability under the lease was in the transaction between Thompson as lessee and Thompson as manager of Continental. Under these circumstances there is little danger that the policy of the statute of frauds would be violated by recognizing the oral transaction as an assignment of the lease.

We have assumed that the covenant to submit to arbitration controversies arising out of the lease is such that it will be binding upon the assignees of the leasehold. It may be noted that the defendant Bob's U-Drive admitted that the covenant to arbitrate was binding on it. If the covenant is binding on an assignee it should make no difference whether the assignment is express or implied. We are of the opinion that the covenant to submit to arbitration ran with the assignment of the lease.

■ To bind the assignee of a leasehold the covenant must "touch and concern" the leasehold estate. There is considerable confusion and uncertainty as to the meaning of this requirement, not only in the adjudicated cases but among the scholars as well. The various tests and the cases on the subject of "touching and concerning" are thoroughly examined in Clark on Covenants. Probably the most definitive test is that suggested in Bigelow, The Content of Covenants in Leases, 12 Mich L Rev 639 (1914). The Bigelow test is summarized by Judge Clark in his book "Covenants and Interests Running with Land (2nd ed)" as follows:

"* * * The method he states is to ascer-

tain the exact effect of the covenant upon the legal relations of the parties. In effect it is a measuring of the legal relations of the parties with and without the covenant. If the promisor's legal relations in respect to the land in question are lessened— his legal interest as owner rendered less valuable by the promise—the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more valuable by the promise—the benefit of the covenant touches or concerns that land. It is necessary that this effect should be had upon the legal relations of the parties as owners of the land in question, and not merely as members of the community in general, such as taxpayers, or owners of other land, in order that the covenant may run." Pages 97, 98.

Although this analysis is frequently helpful in testing covenants for their character as "real" or "personal" covenants, it still leaves open to judicial inquiry in each case the question of whether the interests of the parties affected by the covenant are those which they have "as owners of the land in question" or separate and apart from such ownership. To this extent, then, the test begs the original question.

In the case at bar the covenant to arbitrate is invoked to require the lessee to submit to arbitration a matter relating to rental payments under the lease. A covenant to pay rent clearly "touches and concerns" the land. It would seem to follow that a covenant to arbitrate a question with respect to rental payments should also be regarded as relating to the property interests of the original covenanting parties as lessor and lessee. As stated in Clark, op cit supra, page 99, "there would seem to be no reason for applying the rule of touching and concerning in an over-technical manner, which is unreal from the standpoint

of the parties themselves." Clark suggests the follow-ing as a practical test:

> "* * * Where the parties, as laymen and not as lawyers, would naturally regard the covenant as intimately bound up with the land, aiding the promisee as landowner or hampering the promisor in similar capacity, the requirement should be held fulfilled."

In applying this test we believe that it is important not only to consider how the original parties as lay-men would naturally regard the covenant, but how one taking a lease as assignee would regard it. As-suming this to be a test to be judicially applied, we believe that the average person accepting the assign-ment of a lease containing a covenant to arbitrate questions relating to the terms of the lease would normally assume that he was bound by the covenant. In this connection it may be noted again that Bob's U-Drive (represented by legal counsel, to be sure) assumed that it was bound by the covenant to arbitrate. The case law on the specific question before us is sparse. *Young v. Wrightson,* 11 Ohio Dec (reprint) 104, 24 Cinc L Bull 457 (1890) supports the view we take. In that case the lease contained a covenant that at the end of stated periods the leasehold would be reappraised and the rent computed on the new ap-praised value. The court held that "It is too plain to admit of argument that the covenant in question is one which is capable of running with the land." In *Worthington v. Hewes & McCann,* 19 Ohio St 66 (1869) a stipulation in a lease as to appraisement of the leasehold was held to run with the land. The court said, at pages 73, 74:

> "We think the covenant regarding the mode of revaluing the premises, equally with the covenants

for revaluation, and for payment of a rent based upon the valuation, runs with the land. The three are inseparably connected, and reflect upon each other."

See also, *Florida Yacht Club v. Renfroe,* 67 Fla 154, 64 So 742 (1914); *Johnson v. Norman,* 98 Wash 331, 167 P 923 (1917); *North Coast Ry. Co. v. A. A. Kraft Co.,* 63 Wash 250, 115 P 97 (1911).

We hold, therefore, that the possession of Continental and Bob's U-Drive made them co-assignees of the lease and that the implied assignment to Continental was sufficient to carry with it the covenant to arbitrate contained in the written lease. Were we to hold that Continental's possession was not under the lease we would, in effect, endorse a practice by which a lessee, through the formation of a corporation, could enjoy the benefits of the lease and at the same time insulate himself from liability on the covenants contained in it.

The opportunity for fraud through such a device is illustrated in the present case. The lease called for the payment of a minimum rent of $75.00 per month and an additional rental of $10.00 per month for each car over eight "owned by Thompson's U-Drive Company." Plaintiff testified that most of the cars were registered in the name of Continental Leasing Company and that a part of the cars so registered were used in the short-term rental business carried on by Bob's U-Drive. When plaintiff's accountant asked to examine the books of both companies he was denied access to Continental's books.

This confusion of affairs of the two corporations could afford yet another basis for regarding Continental as an assignee of the lease. It is well established that where corporate affairs are confused with

those of the stockholders, a subsidiary or an affiliate corporation the corporate veil may be lifted to protect persons whose rights have been jeopardized by the corporate device. *Consolidated Rock Products Co. v. Du Bois,* 312 US 510, 61 S Ct 675, 85 L Ed 982 (1941); *Costan v. Manila Electric Co.,* 24 F2d 383 (2nd Cir 1928); *Donovan v. Purtell,* 216 Ill 629, 119 Ill App 116, 75 NE 334 (1905); *Louisville & N. R. Co. v. Nield,* 186 Ky 17, 216 SW 62 (1919); *Quaid v. Ratkowsky,* 183 App Div 428, 170 NYS 812 (1918); *Associated Oil Co. v. Sieberling Rubber Co.,* 172 Wash 204, 19 P2d 940 (1933). See: Horowitz, Disregarding the Entity of Private Corporations, 14 Wash L Rev 285, 292 (1939), 15 Wash L Rev 1, 14 (1940); Comment, 29 Yale L J 659 (1920). We would be justified on the basis of the evidence in this case to treat the two affiliate corporations as one and regard the assignment of the lease to Bob's U-Drive as inuring to Continental as well. However, we are satisfied to rest the decision upon the ground previously stated.

Finally, it is urged by the defendants that the trial court erred in entering a joint and several judgment against them on the ground that there is no evidence in the record of joint and several liability.

We do not have as a part of the record on appeal the transcript of testimony taken before the board of arbitrators. Consequently, we do not know what the evidence adduced in that proceeding would disclose with respect to the joint and several liability of the defendants. But even though the judgment is cast in the wrong form, the defendants cannot now complain. No objection was made in the trial court to the form of the judgment. An objection to the form of a judgment made for the first time on appeal comes too late. *Rea v. Rea,* 195 Or 252, 245 P2d 884,

35 ALR2d 612 (1952); *Reed v. Mills,* 78 Or 558, 154 P 113 (1916). Specifically, the objection that a joint judgment should have been several, or that a several judgment should have been joint, or that a joint and several judgment should have been either, but not both, is waived by failure to make it in the lower court. *Altvater v. Breckenridge,* 345 P2d 358 (Cal App 1959); *Miller v. San Francisco Church E. S. of M. P. Church,* 125 Cal App 85, 13 P2d 824 (1932); *Clark's Adm'x. v. Callahan,* 216 Ky 674, 288 SW 301 (1926); *Hornbeck v. Midwest Realty, Inc.,* 287 Mich 230, 283 NW 39 (1938); *Van Sickle v. Roberson,* 68 SW2d 530 (Tex Civ App 1934); *Sanger Bros. v. Corsicana National Bank,* 87 SW 737 (Tex Civ App 1905).

The judgment of the lower court is affirmed.

DUNCAN, J. (Pro Tempore), dissenting in part.

Defendant Continental Leasing Co. raised timely objection to the petition seeking to require it to arbitrate under the lease between plaintiff, as lessor, and Robert E. Thompson, as lessee. Defendant also objected to the entry of judgment against it by the circuit court based on the award of the arbitrators.

Defendant Continental was not a party to the lease; the lease contained no provision binding assignees or sublessees to the covenants thereof; nor did defendant expressly assume any of the obligations of the lease.

When a party other than the lessee is shown to be in possession and occupancy of leased premises, the law will presume that the lease has been assigned to such party, and the party may be held liable for the payment of the rent unless able to overcome the presumption by proof that some other relationship exists between that party and the original lessee. *Leadbetter v. Pewtherer,* 61 Or 168, 121 P 799.

However, in the absence of an express agreement by the assignee to be bound by the lease covenants, the assignee is bound only by those covenants which run with the land. No privity of contract arises from the naked assignment, but only privity of estate. *First Nat. Bank v. Hazelwood Co.,* 85 Or 403, 166 P 955. Only real covenants run with the land. It is an essential quality of a real covenant that it relates to the realty, having for its object something annexed to or inherent in or connected with the land or other real property. *First Nat. Bank v. Hazelwood Co.,* supra.

Under authority of that case, a covenant to pay rent runs with the land. It is deemed, however, that a covenant to arbitrate is personal and does not run with the land. Accordingly, defendant was entitled to have its alleged obligation to pay rent tried out in an appropriate law action.

It is unnecessary to impose a contractual relationship on defendant where none was entered into by it. If fraud existed, plaintiff had a remedy. Also, plaintiff could have fully protected himself, if desired, by a clause in the lease prohibiting an assignment or subletting or by a clause expressly binding assignees and sublessees to all obligations of the lease.

The trial court was without jurisdiction to compel defendant Continental Leasing Co. to arbitrate and the judgment against that defendant based on the arbitration award should be reversed.