JOHNSON, J.
Petitioners, Hollywood Investment Co. and A. J. Rose & Son, Inc., seek judicial review of the order of the Board of Funeral Directors and Embalmers denying A. J. Rose & Son, Inc. application for a license to operate a funeral establishment and further ordering petitioners not to utilize the name "A. J. Rose & Son, Inc.”
Hollywood Investment Co. operates a licensed funeral establishment at 4733 N. E. Thompson in Portland under the assumed business name of "Ross Hollywood Chapel.” In 1976, Hollywood Investment purchased the assets and name of A. J. Rose & Son, which operated a licensed funeral establishment at S.E. 6th and Alder. Hollywood Investment then formed a subsidiary corporation, A. J. Rose & Son, Inc., and transferred the newly acquired assets to the new corporation with the intent of operating a funeral establishment at the same location as that of Ross Hollywood Chapel. A. J. Rose & Son, Inc. applied for a funeral establishment license which was denied. The Board made findings of fact substantially as stated. The Board denied the license because another funeral establishment, Ross Hollywood Chapel, is already located on the same place. It is not clear from the Board’s opinion by what rationale it reached its decision.
The Board’s opinion suggests that it has implied powers to deny a funeral establishment license for "the protection of public health, safety and welfare” by virtue of ORS 692.320(1) which provides:
"(1) The board has the power to adopt and enforce for the protection of the public health, safety and welfare reasonable rules relating to:
"(a) The practice of embalming and funeral directing. "(b) Sanitary conditions of funeral establishments, including plumbing, sewerage, ventilation and equipment; provided that such rules shall not prescribe lower *[540] standards of installation than those required under ORS chapter 447.”
The Board has no rules relating to the activities at issue here. The only ground upon which a license for a funeral establishment may be denied are set forth in ORS 692.180.[1]
*[541] It is apparently the Board’s position that, although there is no express authority in ORS 692.180, the Board can refuse to issue two licenses to the same person operating at the same place. While it is true that a "funeral establishment” is statutorily defined as a "place of business,” ORS 692.010(6), licenses are issued to persons, not places. ORS 692.144 prescribes:
"(1) No one shall operate a funeral establishment unless licensed so to do by the board as provided in this chapter.
"(2) For the purposes of this chapter, each branch of an operator’s funeral establishment is a separate establishment and must be licensed at a fixed place of business.”
ORS 692.146 refers to an "application for a license to operate a funeral establishment.” ORS 692.010(7) defines an "operator” as "* * * a person, corporation, firm or other organization operating a funeral establishment.”
 The license applicant, A. J. Rose and Son, Inc., is a corporation operating a funeral establishment, and thus an "operator.” The applicant is a separate and distinct legal entity, and is not the same person as Hollywood Investment dba Ross Hollywood Chapel. The undisputed testimony was that the applicant intended to operate a funeral business separate from Hollywood Investment dba Ross Hollywood Chapel with separate financial records, bank accounts and phone listings. There was no evidence concerning use of personnel, equipment or facilities other than that A. J. Rose & Son, Inc. and Hollywood Investment dba *[542] Ross Hollywood Chapel would be sharing the same physical space. The Board concluded that, despite the fact that they are two separate legal entities, A. J. Rose & Son, Inc. and Hollywood Investment were the same person. Piercing the corporate veil may be justified in order to prevent fraud under ORS 692.180(2)(a). However, there must be some evidence or at least a reasonable possibility of fraud. Cf. Abbot v. Bob’s U-Drive, 222 Or 147, 162, 352 P2d 598, 81 ALR2d 793 (1960). The only evidence is that Hollywood Investment purchased for a valuable consideration the assets, name and good will of A. J. Rose & Son and transferred those assets to another business incorporated under the name A. J. Rose & Son, Inc. We cannot ascribe fraud to a common business transaction.
The Board states in its opinion:
"We are not entirely unconvinced the scheme of applicant is not inherently misleading and a misrepresentation under ORS 692.180(2)(a)(b). To suggest to the public that A. J. Rose & Son, Inc. 'lives’ at a new physical location already licensed to a person, Hollywood Investment Co., dba Ross Hollywood Chapel, Inc., is at the minimum confusing and misleading and at the maximum a misrepresentation.”
We cannot discern anything that is inherently a misrepresentation or misleading in the fact that two ^businesses share the same physical space or facilities or that both are owned by the same person. The Board itself has previously licensed Hollywood Investment Co., Inc., to operate as Ross Hollywood Chapel, Inc., and licensed "A. J. Rose & Son” although according to the record, A. J. Rose and the son have been deceased for many years. There is nothing in the record to indicate that anyone has been or is likely to be misled. The only evidence is that A. J. Rose and Son, Inc., has made vigorous efforts to advise everyone who would be concerned of the change of ownership and location.
We can find nothing in the record before us to suggest any reason that the applicant should be denied *[543] a license under ORS 692.180. It is unnecessary to further discuss petitioner’s second assignment.
Reversed and remanded.

ORS 692.180 provides:
"The Board has the power to refuse to grant, to refuse to renew, to suspend or revoke a license after proper hearing and notice to the licensee, upon the licensee being found guilty of any of the following acts or omissions:
"(1) Conviction of a crime involving moral teipitude.
"(2) Unprofessional conduct which hereby is defined to include:
"(a) Misrepresentation or fraud in the conduct of the business or the profession of a funeral director or embalmer.
“(b) False or misleading advertising as a funeral director or embalmer.
"(c) Solicitation of human dead bodies by the licensee, his agents, assistants or employes, whether such solicitation occurs after death or while death is impending; but this does not prohibit general advertising.
"(d) Employment by the licensee of persons known as 'cappers’ or 'steerers’ or 'solicitors’ or other such persons to obtain funeral directing or embalming business.
"(e) Employment directly or indirectly of any apprentice, agent, assistant, embalmer, employe or other person, on part or full time, or on commission, for the purpose of calling upon individuals or institutions by whose influence dead human bodies may be turned over to a particular funeral director or embalmer.
"(f) The buying of business by the licensee, his agents, assistants, or employes, or the direct or indirect payment or offer of payment of a commission by the licensee, his agents, assistants or employes for the purpose of securing business.
"(g) Gross immorality.
"(h) Aiding or abetting an unlicensed person to practice funeral directing or embalming.
"(i) Using profane, indecent or obscene language in the presence of a dead human body, or within the immediate hearing of the family or relatives of a deceased, whose body has not yet been interred or otherwise disposed of.
"(j) Solicitation or acceptance by a licensee of any commission or bonus or rebate in consideration of recommending or causing a dead human body to be disposed of in any crematory, mausoleum or cemetery.
"(k) Using any casket or part of a casket which has been previously used as a receptacle for, or in connection with, the burial or other disposition of, a dead human body.
*[541] "0) Violation of any of the provisions of this chapter.
“(m) Violation of any state law or municipal or county ordinance or regulation affecting the handling, custody, care or transportation of dead human bodies.
"(n) Fraud or misrepresentation in obtaining a license.
"(o) Refusing to promptly surrender the custody of a dead human body, upon the express order of the person lawfully entitled to the custody thereof.
"(p) Failure to comply with ORS 128.410 to 128.415.”