Argued and submitted February 26, reversed and remanded with instructions to dismiss September 10, reconsideration denied October 31, petition for review allowed December 23, 1986 (302 Or 460)

In the Matter of the Arbitration of
Disputes regarding Hilltop
Development Corporation.

HALVORSON-MASON CORPORATION,
*Appellant,*

*v.*

EMERICK CONSTRUCTION CO.,
*Respondent.*

(A8204-02105; CA A34175)

724 P2d 871

William P. Hutchison, Jr., Portland, argued the cause for appellant. With him on the briefs were David R. Maier and Hutchinson, Hutchison & Hooper, Portland.

David J. Sweeney, Portland, argued the cause for respondent. With him on the brief were Mark B. Weintraub and Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland.

Before Richardson, Presiding Judge, and Warden and Rossman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Halvorson-Mason Corporation (Halvorson) appeals from a judgment for Emerick Construction Co. (Emerick), which was rendered on an arbitrator's award pursuant to ORS 33.210 to 33.340. Although Halvorson willingly participated in the proceedings before the arbitrator, it moved to dismiss the court action on the grounds that there was no written agreement between the parties to submit the dispute to arbitration and that Emerick submitted no such agreement to the clerk of the court with its filing of the arbitrator's award. ORS 33.310. Halvorson argues that the court therefore lacked subject matter jurisdiction. The trial court denied the motion, and Halvorson assigns error to that ruling. We conclude that Halvorson is correct, and we remand with instructions to dismiss for want of jurisdiction.

ORS 33.220 provides:

"A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between persons to submit to arbitration any controversy then existing between them, shall, provided the arbitration is held within the State of Oregon, be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

ORS 33.310 provides that, to initiate proceedings for the rendition of a judgment on an arbitration award:

"The award of the arbitrators, together with the written agreement to submit, shall be delivered to the clerk of the court selected to render judgment on the award."

Emerick's submission of the arbitrator's award to the court was accompanied by the award itself and correspondence consisting of a letter from Emerick to the arbitrator, a letter from Halvorson to the arbitrator and a letter from the arbitrator to the two parties. The letters from the parties to the arbitrator were simply unilateral statements, showing no consensus about whether the arbitrator was to render a binding decision. Neither that correspondence nor anything else in the record constitutes a written agreement between the parties to submit their dispute to arbitration. There is also no writing in the record which the evidence shows to have been

the subject of a contemporaneous meeting of the parties' minds concerning binding arbitration. *See* note 1, *infra.*

It is clear that the parties did not intend to enter into a written agreement. The arbitrator, a Portland attorney, offered to prepare an agreement. The parties' principals' declined, because, as explained in Emerick's brief, "[b]oth Mr. Halvorson and Mr. Emerick stated that would not be necessary, that they were gentlemen, and would be bound by their word." The arbitrator cautioned the parties, in a subsequent letter:

> "You each advised you did not wish to retain counsel to represent you and that I need not prepare an agreement to submit the matter to arbitration, although I pointed out that my decision might not otherwise be fully binding upon you."

The evidence was sufficient to support a finding that the parties agreed orally to the resolution of the controversy by the arbitrator. The question is whether there had to be a written agreement for the court to have jurisdiction under ORS 33.210 *et seq.*

Halvorson appears to argue that both the existence of a written agreement and its submission to the clerk when the judicial proceeding is initiated are jurisdictional prerequisites to the rendition of a judgment pursuant to ORS 33.210 *et seq.* We need decide only the first prong of the argument. The most analogous Oregon case is *Abbott v. Bob's U-Drive et al,* 222 Or 147, 352 P2d 598 (1960). The plaintiff in that case was a lessor of real property under a written lease which required that controversies be submitted to arbitration. The lessee made a written assignment of his interest in the lease to the defendant Bob's U-Drive. However, the premises were also occupied by Continental Leasing Company, which was not privy to the lease by virtue of the assignment or any other writing. A dispute arose, and the plaintiff petitioned the circuit court to compel both defendants to proceed to arbitration. *See* ORS 33.230. Continental moved to dismiss the petition "on the ground that there was no assignment of the lease to it" and that it "could not be required to submit to arbitration under ORS 33.210 *et seq.* because it had not been a party to a written contract containing an agreement to submit to arbitration which is required by ORS 33.220." 222 Or at 151, 155. The Supreme Court rejected the argument:

> "We are of the opinion that Continental became a co-assignee of the lease together with Bob's U-Drive prior to the written assignment of lease. When a person other than the lessee is in possession of leased premises paying rent to the lessor, there is a presumption that the lease has been assigned to the person in possession. * * *" 222 Or at 156.

■   Continental's motion in *Abbott* was premised on the assumption that a written agreement to arbitrate is a jurisdictional prerequisite to a proceeding under ORS 33.210 *et seq.* The court appeared to share that assumption, at least *arguendo,* but it did not expressly address the jurisdictional issue. We now conclude that the existence of a written agreement to arbitrate is essential to the court's authority to render judgment on an arbitration award under ORS 33.210 *et seq.* The literal language of ORS 33.220 compels that answer, and there are persuasive policy reasons for a literal reading of the language. Oregon appellate courts have defined a very limited scope of judicial review of arbitration awards. *See, e.g., Brewer v. Allstate Insurance,* 248 Or 558, 436 P2d 547 (1968). That circumscribed review applies even to an arbitrator's decision about whether the arbitration agreement gives him jurisdiction over particular controversies. *See Beaverton Ed. Assn v. Wash. Co. Sch. Dist. No. 48,* 76 Or App 129, 708 P2d 633 (1985), *rev den* 300 Or 545 (1986) (construing the arbitration provisions of the Public Employe Collective Bargaining Act, but applicable by analogy to judicial review of commercial arbitration awards).

■   The rationale of those decisions is that, as a matter of policy and statutory intent, a party who agrees to resolve disputes through arbitration should not be permitted to avoid an arbitrator's unfavorable decision by relitigating the controversy in the courts. The complementary principle is that, before a party can be held to an agreement to arbitrate, it must be clear that the party so agreed. The legislature has unambiguously provided that, for the statute to apply and for the summary judicial review of and rendition of judgment provisions of the statute to be available, the agreement to arbitrate must have the formality of a writing.[1]

---

[1] We do not suggest that the writing must be a mutually subscribed instrument. For example, an exchange of letters with clear cross-references or express statements of agreement or consent to arbitration could also suffice. The agreement may be entered into after the arbitration as well as before.

The trial judge concluded that the necessity for a written agreement was excused here, because Halvorson had participated in the arbitration proceedings and

> "* * * the fact that [the arbitrator] discussed with [the parties] orally and then in writing advised them of the fact that it wasn't in writing and the fact that each party subsequent to that had responded in writing, indicates that whatever was the purpose to be served by a written arbitration agreement was resolved in this case by the events that took place * * *[.] [W]aiver, ratification, whatever theory you want to hold on."

■ ■ It is not entirely clear whether the trial judge's principal point was that Halvorson's correspondence was the equivalent of a written agreement to arbitrate or that Halvorson's conduct gave rise to a waiver of its right to question the court's jurisdiction on the ground that there was no written agreement. As we have noted, we do not think the correspondence can be read as embodying an agreement to binding arbitration. The trial court appears to have reasoned that Halvorson's continued correspondence with the arbitrator and participation in the proceedings after the arbitrator advised the parties about the possible import of there being no written agreement was a satisfactory substitute for a written agreement. The opposite conclusion follows more logically: The fact that the parties expressly declined the arbitrator's advice that they enter into a written agreement, notwithstanding his warning that his decision might not be binding without one, is inconsistent with the inference that their participation in the proceedings evidenced a willingness to be bound by the result. *See* note 2, *infra.* In any event, our conclusion that a written agreement is a jurisdictional requirement to judicial proceedings under ORS 33.210 *et seq* is contrary to the trial court's implication of an agreement.

■ Our jurisdictional conclusion is also contrary to the trial court's and Emerick's waiver theory. In *Ficek v. Southern Pacific Company,* 338 F2d 655 (9th Cir 1964), the court said:

> "It is true that arbitration is a matter of contract, and that one is bound by an award only if he agreed to submit the issue to arbitration. But an agreement to arbitrate a particular issue need not be express—it may be implied from the conduct of the parties. * * *" 338 F2d at 656. (Footnote omitted.)

The court went on to hold that, by in fact participating in an arbitration proceeding, the appellant "evinced a subsquent agreement" to arbitrate the dispute. The court's reasoning is attractive, but the Oregon statutes do not permit us to follow it.[2] By making only written arbitration agreements subject to ORS 33.210 *et seq,* the legislature has foreclosed the possibility of waiver by participation. The only form of waiver that could be effective under those statutes is a writing or combination of writings in which the parties agree to arbitrate notwithstanding the absence of an earlier agreement to arbitrate.

Emerick states in its brief:

"* * * [S]hame on [Halvorson]. The Arbitrator * * * testified that he specifically undertook to ask the parties whether a written arbitration agreement should be prepared. They both indicated that they were 'gentlemen' and that their word was all that was needed. Mr. Emerick's testimony confirmed this. Significantly, Mr. Halvorson's testimony was silent on all aspects of this issue. The trial court had little difficulty in heading off one gentleman's retreat into the thicket of statutory objections. * * *"

The regrettable answer is that the trial court and we cannot act beyond our jurisdiction to enforce rules of etiquette. Moreover, we do not share the view that it is ungenteel for parties who intend to honor their contracts to reduce them to writing. Written agreements promote clarity in the normal situation where both parties honor the agreement, as well as promoting enforceability in the exceptional situations where one of them does not.

Reversed and remanded with instructions to dismiss.

---

[2] It is unclear from the court's opinion what jurisdiction's law it applied in *Ficek.* The action was for breach of an employment contract, and it was brought in the United States District Court for Oregon. The appellate court relied exclusively on federal common law and labor law cases.

There is an assumption in *Ficek,* shared by the trial court here, which we find questionable. Participation in a dispute resolution proceeding before a neutral third party does not *per se* connote a willingness to *arbitrate.* A consultation can be subjectively perceived as being for something other than a binding resolution. A virtue of written agreements is that they provide an effective means of assuring that the parties' subjective understandings are the same.