Argued and submitted March 3, decision of the Court of Appeals reversed and remanded to trial court for further proceedings December 2, 1987

In the Matter of the Arbitration of
Disputes Regarding
Hilltop Development Corporation.

**HALVORSON-MASON CORPORATION,**
*Respondent on Review,*

*v.*

**EMERICK CONSTRUCTION CO.,**
*Petitioner on Review.*

(TC A8204-02105; CA A34175; SC S33345)

745 P2d 1221

David J. Sweeney, Portland, argued the cause for petitioner on review. With him on the petition were Mark B. Weintraub and Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland.

William P. Hutchison, of Hutchison, Hutchison & Hooper, Portland, argued the cause for respondent on review.

LINDE, J.

## LINDE, J.

Halvorson-Mason Corporation (Halvorson) and Emerick Construction Co. (Emerick) engaged in a land transaction which involved a formula for fixing the value of certain property. A controversy arose about the formula, and the parties agreed to submit it to arbitration. The arbitrator ruled in favor of Emerick. When Emerick sought enforcement of the award, Halvorson filed exceptions, including an objection to the court's jurisdiction for lack of a written agreement to arbitrate the dispute. The circuit court rejected that objection and, after one remand to the arbitrator, entered judgment on the amended award.

On appeal, Halvorson renewed its contention that the circuit court lacked "subject matter jurisdiction" because the agreement to arbitrate was not in writing. Emerick argued, as it had in the circuit court, that certain correspondence between each party and the arbitrator together satisfied the writing requirement of Oregon's arbitration statute, ORS 33.220 and 33.310, and if not, that Halvorson had waived the statutory requirement by that correspondence and by participating in the arbitration to the end.

The Court of Appeals agreed with Halvorson, noting that the arbitrator had drawn the absence of a written agreement to the parties' attention and that they had declined his proposal to prepare one. The court also accepted Halvorson's contention that the lack of a written agreement deprived the circuit court of "subject matter jurisdiction." The Court of Appeals therefore reversed the judgment enforcing the award and directed the circuit court to dismiss the case. *Halvorson-Mason Corp. v. Emerick Const. Co.,* 81 Or App 119, 724 P2d 871 (1986). We agree that there was no adequate written agreement but not with the holding as to the circuit court's jurisdiction. We therefore reverse the decision of the Court of Appeals and remand the case to the circuit court for further proceedings.

The Court of Appeals stated the question to be "whether there had to be a written agreement for the [circuit] court to have jurisdiction under ORS 33.210 et seq." The reference to the arbitration statute is understandable, because the parties litigated the case as a demand for summary enforcement of an arbitration award under the statute, *see*

ORS 33.310 to 33.340, but the conclusion about "jurisdiction" does not follow. The Court of Appeals discerned support for its conclusion in *Abbott v. Bob's U-Drive,* 222 Or 147, 352 P2d 598 (1960), which it read as assuming *arguendo* that a tenant was bound by an arbitration agreement in a lease only because the tenant was a co-assignee of the lease; but the court also noted that the *Abbott* court did not expressly speak of a jurisdictional issue. 81 Or App at 123. *Abbott* aside, the Court of Appeals stated that the limited scope of judicial review of arbitration awards gave "persuasive policy reasons" for confining the statutory enforcement of awards to arbitrations under written agreements. *Id.*

Arbitration statutes, including Oregon's, originated in the 1920s to overcome caselaw obstacles to the effective use of commercial arbitration. *See* Sayre, *Development of Commercial Arbitration Law,* 32 Yale L J 595 (1928). Some decisions had drawn distinctions between submissions of existing and of future disputes, between an agreement limited to appraisal and one for arbitration of the entire dispute, and between enforcement of awards, enforcement of agreements to arbitrate and the defensive use of such agreements as a condition precedent to liability. *See generally Rueda v. Union Pacific Railroad Co.,* 180 Or 133, 175 P2d 778 (1946), noted in 26 Or L Rev 280 (1947), reviewing the leading cases and treatises of that era on these issues. The statutes, at least in part, must be understood as responses to those problems. Thus the original Oregon statute of 1925 was phrased in the form of permission to the parties to submit any "controversy, suit or quarrel" to arbitration, and it required the agreement to arbitrate to be in writing and signed by the parties. Or Laws 1925, ch XXVI, § 1. The method of enforcing the award by submitting the award and the written agreement to the clerk also was enacted at this time. *Id.* § 5. The corresponding current sections, dating from a 1931 revision of the statute, provide:

> "All persons desiring to settle by arbitration any controversy or quarrel, except such as respect the title to real estate or the terms or conditions of employment under collective contracts between employers and employes or between employers and associations of employes, may submit their differences to the award or umpirage of any person or persons mutually selected.

"A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between persons to submit to arbitration any controversy then existing between them, shall, provided the arbitration is held within the State of Oregon, be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

ORS 33.210, 33.220. The next section, ORS 33.230, then provides for judicial enforcement of "a contract or submission providing for arbitration, described in ORS 33.220." Where the parties dispute whether an agreement was made or complied with, either party may demand a jury trial on those issues; otherwise the court shall order the parties to proceed to arbitration. So far, the statute removes ancient objections to arbitration on grounds of "public policy," ends the old option of unilateral termination, and prescribes specific performance of a properly made agreement. Doubtless this means an agreement "described in ORS 33.220," *i.e.*, a written agreement.

After several sections dealing with the selection and powers of arbitrators, the statute then provides procedures for the enforcement of awards. ORS 33.310 states:

"The award of the arbitrators, together with the written agreement to submit, shall be delivered to the clerk of the circuit court selected to render judgment on the award. After charging and collecting a fee of $25 therefor, the clerk shall enter the same of record in the office of the clerk. A copy of the award, signed by the arbitrators, or a majority of them, shall also be served upon or delivered to each of the parties interested in the award, and proof of such service or delivery shall be filed with the clerk. If no exceptions are filed against the same within 20 days after such service, judgment shall be entered as upon the verdict of a jury, and execution may issue thereon, and the same proceedings may be had upon the award with like effect as upon a verdict in a civil action."

ORS 33.310. ORS 33.320 provides for filing exceptions limited to a number of challenges to the integrity, conduct or procedures of the arbitrators but excluding the merits of the dispute. If upon examining the exceptions the court concludes that the award should be vacated or modified, ORS 33.330 provides for a remand to the arbitrators; only if they do not follow the court's instructions may the court itself determine

the case. Again, ORS 33.310, quoted above, presupposes a "written agreement to submit" the dispute to arbitration.

■ We agree with the Court of Appeals that neither party in this case could invoke the procedures of ORS 33.310 to 33.330 in the absence of the "written agreement" referred to in ORS 33.310. Nor can either claim that the other proceeded on the premise that such an agreement existed, when the arbitrator brought its absence to their attention and they chose to rely on a "gentlemen's agreement" rather than have a written submission prepared. But that does not end the case.

■ ■ The arbitration statutes were superimposed on the common law of arbitration, for the reasons already mentioned. They did not replace common law arbitration when the statute does not apply. *Rueda v. Union Pacific Railroad Co., supra,* in 1946, barely mentioned the statute in passing. And common law did not require a written agreement, at least not for validity of an award. As the leading writer on the arbitration statutes pointed out, at common law an oral agreement and an oral award ordinarily suffice, and neither need be filed in any court. Sturges and Reckson, *Common-Law and Statutory Arbitration: Problems Arising From Their Coexistence,* 46 Minn L Rev 819, 820 (1962).

We need not now pursue every problem of the coexisting systems to which Dean Sturges referred. It is enough to observe that failure of an arbitration award to qualify for enforcement under ORS 33.320, for instance for lack of an adequate written submission, may be a valid defense, but existence of a defense does not deprive the circuit court of jurisdiction. A common law claim on the award also would be in the court's jurisdiction. Halvorson says that this is the remedy Emerick could seek rather than enforcement of the award under ORS 33.330. Other courts have so held; *see, e.g., Pittsfield General Hospital v. Markus,* 355 Mass 519, 522-23, 246 NE2d 444, 446 (1969); *Jones v. John A. Johnson & Sons,* 129 NYS2d 479, 481, *aff'd* 283 App Div 1085, 131 NYS2d 362 (1954); *Park Construction Co. v. Independent School Dist.,* 209 Minn 182, 185, 296 NW 475, 477 (1941); *Beall v. Board of Trade,* 164 Mo App 186, 192, 148 SW 386, 388 (1912). Dean Sturges wrote:

"If in any of the foregoing proceedings, an award is adjudged invalid as a *statutory* award, it seems that the

orderly and economic dispatch of judicial business would require further judicial determination, in the same proceeding, of the stature of the award as a *common-law* award.[127] If the award is adjudged valid as a common-law award, it seems that fit judgment or decree should be entered competent to support execution as in other cases."

46 Minn L Rev 819, 862-63 (1962)(emphasis in original).[1] The question therefore is how an unsuccessful claim for statutory enforcement of an award can become a claim for common law relief.

■      Emerick began the proceedings in this case by filing a "submission" addressed to the clerk of the circuit court and attaching the arbitrator's award and related correspondence "pursuant to ORS 33.310 * * * for delivery and entry of record." Unlike this submission under the statute, a proceeding on a common law arbitration award would be initiated by a complaint. The submission perhaps could be converted into a complaint by additional allegations, along with a request for relief addressed to the court rather than to the clerk. But these procedural issues following from an unsuccessful submission under the statute have not been briefed nor considered by the circuit court, which has initial authority over motions addressed to pleadings. ORCP 23. We therefore do not anticipate them here.

The decision of the Court of Appeals is reversed, and the case is remanded to the circuit court for further proceedings.

---

[1] Note 127 stated:

"See Holdridge v. Stowell, 39 Minn. 360, 40 N.W. 259 (1888). See also Kreiss v. Hotaling, 96 Cal. 617, 31 Pac. 740 (1892); Fink v. Fink, 8 Iowa 312 (1859). But cf. Bureker v. Jefferson County, 201 Iowa 251, 207 N.W. 115 (1926). Although the majority of courts hold that the statutory motions may not be utilized to enforce common-law awards, once the court has taken jurisdiction in the statutory proceeding, general equity principles should allow the court to retain jurisdiction to render complete relief in one proceeding."