EMERICK CONSTRUCTION COMPANY,
*Respondent,*

*v.*

HALVORSON-MASON CORPORATION,
*Appellant.*

(A8204-02105; CA A62061)

806 P2d 159

William P. Hutchison, Jr., Portland, argued the cause for appellant. With him on the briefs were Robert E. L. Bonaparte and Tooze Shenker Holloway & Duden, Portland.

David J. Sweeney, Portland, argued the cause for respondent. With him on the brief were Paul G. Dodds and Brownstein, Rask, Sweeney, Kerr, Grim & DeSylvia, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Halvorson-Mason Corporation (Halvorson) appeals from the trial court's entry of judgment on an arbitrator's award to Emerick Construction Company (Emerick). We affirm.

The parties entered into a joint venture that purchased property in Mountain Park in 1972. In 1976, they received an offer to buy half of the property. Halvorson favored accepting the offer, but Emerick did not. They resolved the disagreement by Emerick transferring its interest in that half of the property (Phase I) to Halvorson's control, in exchange for an interest in the other half (Phase II). The exchange was subject to the condition contained in a letter from Emerick to Halvorson and accepted by the latter:

> "When Phase II is sold or its development value is established in contemplation of sale or development, that value will be compared with the development value of Phase I. For this purpose Phase I will be evaluated as though it were then undeveloped and without regard to the price that was paid for Phase I in the sale now pending. If the established development value of Phase II is less than that of Phase I when the determination is made, the one-third interest in Phase II now being conveyed * * * will be adjusted by multiplying it by the development value of Phase I and dividing by the development value of Phase II."

In 1980, the venture sold Phase II for $560,000. Halvorson and Emerick were unable to agree about how to apply the adjustment formula, and they submitted the issue to an arbitrator. The parties agreed that the arbitrator was to proceed on the understanding that the term "development value" in Emerick's letter meant "fair market value" and that the fair market value of Phase II on the August 1, 1980, comparison date was the $560,000 sale price.

The arbitrator issued an award in favor of Emerick, which Emerick submitted to the circuit court for entry of judgment, pursuant to *former* ORS 33.210 *et seq.* The court vacated the award, principally because the arbitrator had not informed the appraiser whom he engaged to appraise Phase I that the agreed value of Phase II was $560,000 and had not told him of the purpose of the appraisal. The court referred the

proceeding back to the arbitrator with these instructions, *inter alia:*

"1. The appraiser you select should be qualified as an MAI and should perform an appraisal that meets the standards that apply to MAI appraisals.

"2. The appraiser shall be furnished a copy of the May 11, 1976, Emerick Construction Co. letter to Halvorson-Mason Corporation. Specific reference shall be made to paragraph 3 of that letter and the appraiser shall be requested to compare as of August 1, 1980, the Phase I and Phase II properties using, for comparison purposes, the $560,000 fair market value of Phase II on August 1, 1980. In making this comparison, Phase I will be evaluated as though it were then undeveloped and without regard to the $390,000 price that was paid for Phase I in 1976. Based upon this comparison, the appraiser shall determine the August 1, 1980, fair market value of Phase I. In this appraisal, Phase II shall be utilized as a comparable and its value for this purpose shall be $560,000.

"3. You are further instructed that if the appraised fair market value of Phase I determined under these circumstances and subject to these instructions is equal to or less than $560,000, the adjusting equation contained in paragraph 3 of the May 11, 1976, letter shall not be applied. To the contrary, if the appraised fair market value of Phase I is more than $560,000, then you should proceed to apply the adjusting equation."

The arbitrator selected a new appraiser, who used the $560,000 value of Phase II as only one of several comparables for valuing Phase I and adjusted the value in accordance with various standard appraisal factors. He gave Phase I a value that exceeded $1,000,000. The arbitrator agreed with the appraiser's approach and applied the formula from the Emerick letter, using the $1,000,000 plus figure as the numerator and $560,000 as the denominator. He awarded Emerick $126,783.35 and, on Emerick's application, the circuit court entered judgment on the award. Halvorson appealed. We reversed and remanded with instructions to dismiss on the basis of our conclusion that the absence of a written arbitration agreement made the statutory procedure for entry of judgments on awards unavailable. *Halvorson-Mason Corp. v. Emerick Const. Co.,* 81 Or App 119, 724 P2d 871 (1986). On review, the Supreme Court agreed, but held that Emerick might nevertheless pursue a common law action to obtain a

judgment on the award. *Halvorson-Mason Corp. v. Emerick Const. Co.,* 304 Or 407, 745 P2d 1221 (1987). The matter was remanded to the trial court, a trial was conducted, and a judgment equal to the arbitration award was again entered. Halvorson again appeals, and we affirm.

The parties do not agree about whether judicial review of the merits of the arbitrator's award in this common law action is as circumscribed as it would be under the arbitration statutes. *See Brewer v. Allstate Insurance Co.,* 248 Or 558, 436 P2d 547 (1968); *Rueda v. Union Pacific Railroad Co.,* 180 Or 133, 156-57, 175 P2d 778 (1946). That is a question that we need not decide, because, given *any* scope of review, Halvorson demonstrates no error. The thrust of its argument is that there was overwhelming evidence that the parts of Phase I and Phase II that the parties exchanged were nearly equivalent in value; that the objective of the adjustment formula was to "protect Emerick against having given up a property interest that was worth more than the one he got," and not to provide Emerick with a windfall; that, therefore, the value of Phase I should have been established by comparison solely with the $560,000 value of Phase II; and that the arbitrator misconstrued the formula and acted in violation of the trial court's instructions in allowing other factors and "comparables" to enter into the valuation of Phase I.

An interpretation and application of the formula consistent with Halvorson's argument might have been conceivable at the outset. However, once the parties stipulated that "development value" was synonymous with "fair market value" and that the fair market value of Phase II was the $560,000 sale price, there was virtually no way that the formula could have been interpreted or applied except in the way that the arbitrator did. The value of Phase II was locked at $560,000, while the value of Phase I was left to be determined by an appraisal of its fair market value as of August 1, 1980.

We also disagree with Halvorson's argument that the arbitrator failed to follow the trial court's instructions in referring the matter back to him. The arbitrator was instructed to hire a qualified appraiser to perform an appraisal that met professional standards. As the arbitrator explained,

the court instructed that the appraiser was to use the Phase II sale as *a* comparable for valuing Phase I, not *the* comparable.[1]

Affirmed.

---

[1] The arbitrator noted in his award letter:

"[The trial judge] ruled that the appraiser shall determine the August 1, 1980 value of Phase I and '. . . Phase II shall be utilized as *a comparable* and its value for this purpose shall be $560,000.' (emphasis added).

"The arbitrator finds as a matter of fact and rules as a matter of law, consistent with the court's ruling, that the sale price of Phase II is only to be used as a comparable and that the appraiser is to utilize that comparable as it would any other, with such adjustments for size, permitted use, date of sale and all other matters which are normally considered in evaluating and adjusting prices or values of comparables.

"Undoubtedly, one of the reasons that both [appraisers] discounted, in part, the sale price of Phase II was the significant inflation that occurred between April 25, 1978, the date of the earnest money which fixed the price of Phase II and August 1, 1980, the date the sale was actually consummated and the purchase price paid. Nevertheless, the date upon which the comparison was to be made was August 1, 1980.

"Halvorson-Mason has difficulty understanding why one sale of an adjoining piece of property does not conclusively determine value. I enclose a copy of an article from the Tuesday, July 24, 1984 Oregonian which discusses the problem and may explain, in part, how appraisers base their decision on a variety of factors that affect market trends, not just an individual sale. Furthermore, each sale considered is evaluated and analyzed individually to see if it is consistent with a trend or pattern or distinguishable in some manner or other. It was the parties' intent, the court and arbitrator's ruling that the appraisal process to determine fair market value of Phase I be done in the normal and usual manner which allows for consideration of all factors, as was done by [the second appraiser].

"The reason why appraisers seek a number of comparables is to avoid the possibility that one particular transaction may be inconsistent with general market conditions and thus should either be rejected or evaluated in the light of other transactions."